STATE of Utah, Plaintiff and Appellee,

v.

Danny RIVERA, Defendant
and Appellant.

No. 930154–CA.

Court of Appeals of Utah.

Feb. 12, 1998.

Joan C. Watt and Elizabeth A. Bowman, Salt Lake City, for Defendant and Appellant.

Jan Graham and Kenneth A. Bronston, Salt Lake City, for Plaintiff and Appellee.

Before HOWE, Associate C.J.,[1] and BENCH and BILLINGS JJ.

## OPINION

HOWE, Associate Chief Justice:

This case is again before us on remand from the supreme court.

## BACKGROUND

In August 1992, the State charged defendant Danny Rivera by an information with count I, aggravated robbery; count II, possession of a dangerous weapon by a restricted person; and count III, failure to respond to an officer's signal to stop. At a preliminary hearing on these charges, Rivera moved to dismiss counts I and II. The magistrate denied his motion and bound him over to stand trial on all three counts. In the district court, he moved to quash the bindover, but the motion was denied. Thereafter, he entered a conditional no contest plea to count II of the information, possession of a dangerous weapon by a restricted person, a second degree felony, and counts I and III were dismissed as part of a plea agreement with the prosecutor. As part of his no contest plea, he explicitly reserved his right to appeal the adverse ruling on his motion to quash the bindover on counts I and II.

On appeal, this court held that the trial court erred in accepting Rivera's conditional no contest plea. We vacated the plea and remanded the case for trial. *State v. Rivera,* 871 P.2d 1023 (Utah Ct.App.1994). However, the supreme court granted certiorari, *State v. Rivera,* 892 P.2d 13 (Utah 1995), reversed this court, and remanded the case to us for further consideration. On remand, we affirmed the trial court's refusal to quash the bindover on count II but refused to review the trial court's failure to quash the bindover on count I because that charge had been dismissed and Rivera had not entered a plea to that count. *State v. Rivera,* 906 P.2d 318 (Utah Ct.App.1995). The supreme court again granted certiorari, *State v. Rivera,* 917 P.2d 556 (Utah 1996), reversed this court, and remanded this case to us for consideration of the trial court's denial of Rivera's motion to quash the bindover on count I, aggravated robbery. *State v. Rivera,* 943 P.2d 1344 (Utah 1997). We now consider whether the trial court erred in denying Rivera's motion to quash the bindover on count I.

## FACTS

The charges against Rivera arise out of the June 1992 robbery of a Top Stop convenience store in Salt Lake County. The robber showed Brenda Kilgrow, the convenience store cashier, a gun and demanded money from the cash register. The robber then fled on foot, heading north on West Temple Street. Kilgrow called the police and described the robber as a young Hispanic male, wearing a black T-shirt, black sweat pants, black Reebok shoes, no socks, and a dark baseball hat.

Shortly after the robbery, Officer Dusten Hansen spotted a truck that was heading north on West Temple Street, about five blocks from the convenience store. He noticed that the driver of the truck fit the general description of the robber that was given by the police dispatcher. He pulled

1. The Honorable Richard C. Howe, Utah Supreme Court Associate Chief Justice, sitting by special appointment pursuant to Utah Code Ann. § 78–7–9.5 (1995); Utah Code Jud. Admin. RC–108(3).

behind the truck and turned on his overhead lights, signaling the driver to pull over. However, the driver did not pull over and began to accelerate to speeds of 60 to 70 miles an hour. The truck eventually crashed into a bus stop bench, and the driver fled on foot. Officer Hansen parked his own vehicle and chased after the driver on foot. The driver then returned to the scene of the wreck, unsuccessfully attempted to start Officer Hansen's vehicle, and then tried to jump into a slow moving car that was passing by. The driver was ultimately apprehended and identified as defendant Danny Rivera.

The police searched Rivera's truck and found a Ruger P85 9mm handgun and a dark blue New York Yankees baseball cap inside the cab. Rivera was a young-looking, Hispanic male and wore clothing matching Kilgrow's description of the robber. Officer Chris Snyder brought Kilgrow back to where Rivera was being detained. The morning was bright and Kilgrow did not have trouble seeing him. He was handcuffed and was forced to face her. She positively identified him as the robber.

Several months after the robbery, Kilgrow attended a police lineup. Rivera was not included in the lineup,[2] and Kilgrow identified another individual as the robber. However, at the preliminary hearing, Kilgrow testified that she had not been certain about her selection at the lineup.

## ANALYSIS

■ The ultimate decision "to bind a defendant over for trial presents a question of law, which we review de novo without deference." *State v. Jaeger*, 896 P.2d 42, 44 (Utah Ct.App.1995) (citing *State v. Humphrey*, 823 P.2d 464, 466 (Utah 1991)). The parties agree that "[t]he probable cause showing at the preliminary examination must establish a prima facie case against the defendant from which the trier of fact could conclude the defendant was guilty of the offense as charged." *State v. Anderson*, 612 P.2d 778,

783 (Utah 1980). While this case has been pending on appeal, the Utah Supreme Court has explained this standard further. In *State v. Pledger*, 896 P.2d 1226 (Utah 1995), the court stated that "[i]n making a determination as to probable cause, the magistrate should view the evidence in a light most favorable to the prosecution and resolve all inferences in favor of the prosecution." *Id.* at 1229 (citations omitted). The court also explained that "[u]nless the evidence is wholly lacking and incapable of reasonable inferences to prove some issue which supports the [prosecution's] claim,' the magistrate should bind the defendant over for trial." *Id.* (quoting *Cruz v. Montoya*, 660 P.2d 723, 729 (Utah 1983)). With these principles in mind, we turn to the evidence introduced by the prosecution at the preliminary hearing to determine if it was sufficient to establish probable cause and bind Rivera over for trial on the aggravated robbery charge.

■ At the preliminary hearing, the prosecution introduced evidence that Rivera matched Kilgrow's description of the robber. It is undisputed that Rivera is a young-looking Hispanic male. Furthermore, at the time of his arrest, he was wearing a black shirt, black sweat pants, black tennis shoes, and no socks. Nevertheless, Rivera contends that Kilgrow's description of the robber does not accurately match him. He argues that although he was wearing black tennis shoes, they were not Reeboks, as described by Kilgrow. He also points out that Kilgrow's description of the baseball hat allegedly worn by the robber did not include the obvious white New York Yankees insignia or white stripes found on the hat in his truck. Although Rivera's points are accurate, they merely point out conflicts and inconsistencies in the evidence. As we explained above, the magistrate was required to resolve such conflicts and inconsistencies in favor of the prosecution. *See Pledger*, 896 P.2d at 1229; *see also Jaeger*, 896 P.2d at 45–46 (holding that the "magistrate should not have decided issues [against the prosecution]

---

**2.** Because the individuals selected for the lineup did not closely resemble Rivera, the prosecution and defense stipulated to a lineup that did not include Rivera. Kilgrow was apparently instructed that Rivera may or may not be in the lineup. She was told that if she did not recognize anyone, she was to write that down. Nevertheless, she identified another individual who was in the lineup as the robber.

where the evidence was in conflict"). On this basis, we conclude that the magistrate correctly decided that Kilgrow's description of the robber's clothing closely matched that worn by Rivera at the time of his arrest and supported the State's contention that he was the robber.

The prosecution also introduced Kilgrow's showup identification of Rivera as evidence at the preliminary hearing. Rivera contends that this identification was so inherently unreliable that it could not support a showing of probable cause. We disagree. The parties agree that the decision in *State v. Ramirez,* 817 P.2d 774 (Utah 1991), is helpful to our analysis of the reliability question at issue in this case even though *Ramirez* dealt with the admissibility of a showup identification at trial. In *Ramirez,* the Utah Supreme Court set forth the following factors that must be used to determine the reliability of an eyewitness identification:

"(1) [T]he opportunity of the witness to view the actor during the event; (2) the witness's degree of attention to the actor at the time of the event; (3) the witness's capacity to observe the event, including his or her physical and mental acuity; (4) whether the witness's identification was made spontaneously and remained consistent · thereafter, or whether it was the product of suggestion; and (5) the nature of the event being observed and the likelihood that the witness would perceive, remember and relate it correctly."

*Id.* at 781 (quoting *State v. Long,* 721 P.2d 483, 493 (Utah 1986)). Even though the court found that the facts in *Ramirez* presented "an extremely close case," the court held that the witness's showup identification of Ramirez was admissible as evidence at his trial. *Id.* at 784.

■ In assailing the showup identification of him, Rivera first contends that Kilgrow's identification fails to meet the first and second reliability factors of *Ramirez* because she did not pay particular attention to the robber during the robbery. However, the record shows otherwise. The robber was the only other person in the store during the robbery. Rivera acknowledges that Kilgrow's attention was focused on his clothing.

She observed that he was a young Hispanic male who was wearing a black shirt, black sweat pants, a dark hat, black tennis shoes, and no socks. He did not wear a mask or otherwise attempt to conceal his face. She also saw him flee north on foot. In light of Kilgrow's detailed observations of the robber, there is evidence that she had ample opportunity to view him and that she did pay particular attention to him during the course of the robbery.

■ Rivera next contends that Kilgrow's identification of him also fails to meet the third reliability factor of *Ramirez* because she was nervous and afraid during the robbery. However, we do not think that the victim's ordinary fear is sufficient to defeat this factor. Otherwise, no victim of a violent crime could ever meet this factor. Even though Kilgrow was nervous and crying at the time of the robbery, she was still able to carefully observe the robber's clothing and appearance. Furthermore, she was able to observe the robber while she was outside smoking a cigarette, minutes before the robbery occurred and before she had reason to be fearful. For these reasons, we conclude that Kilgrow's identification adequately meets this factor.

■ The fourth reliability factor is the most difficult to meet in this case. Rivera correctly points out that Kilgrow's identification of him has not remained entirely consistent because she identified the wrong man during the lineup. He also contends that the conflicts in her description of the robber demonstrate further inconsistencies in her identification. Nevertheless, we do not believe that these inconsistencies necessarily make her showup identification so unreliable that it cannot be used to establish probable cause.

While her showup identification was made within an hour of the robbery, the lineup identification did not take place until several months later. Furthermore, during the preliminary hearing, Kilgrow testified that in spite of her identification of another individual at the lineup, she was not positive that the person she had identified at the lineup was the robber. She explained that she was ner-

vous during the lineup, paid little attention to the prosecutor's instructions, and did not really read the instruction card. She also testified that she picked the person in the lineup who most closely resembled Rivera. The magistrate was required to view this testimony in favor of the prosecution. Therefore, the magistrate correctly viewed Kilgrow's testimony as a reasonable explanation for her misidentification of the robber at the lineup.

■ In addition, contrary to Rivera's assertion, Kilgrow's description of the robber has remained the same. At the time of the robbery, she described the robber as a young Hispanic male wearing a black shirt, black sweats, a dark hat, black Reebok tennis shoes, and no socks. She has not recanted this description. Furthermore, any conflicts in her description of his height, the brand of his shoes, or the details of his hat were not significant enough to make her identification entirely unreliable. The magistrate determined that she was "no rocket scientist" and properly left the resolution of such conflicts for the jury at trial.

■ We also do not believe that the circumstances underlying Kilgrow's showup identification were so suggestive that it could not be used to establish probable cause. Although it is true that Kilgrow identified Rivera while he was handcuffed and being held by several police officers, we find that these circumstances are remarkably similar to those in *Ramirez*. In that case, the witness identified Ramirez while he was handcuffed to a chain-linked fence and was surrounded by police officers. *Ramirez*, 817 P.2d at 784. Additionally, police officers in *Ramirez* remarked that they had apprehended someone who fit the description of one of the robbers. *Id.* Notwithstanding these circumstances, the court concluded that the showup identification was still admissible as evidence at trial. *Id.* Likewise, we conclude that the circumstances underlying Kilgrow's showup identification of Rivera were not so suggestive to make it wholly unreliable.

Finally, Rivera does not seriously contend that Kilgrow's identification fails to meet the fifth factor of *Ramirez*. Kilgrow was robbed when the convenience store was not yet open for regular business. The robber was the only other person inside the store at the time. The nature of this event made it likely that she would perceive and remember the event correctly.

■ Because Kilgrow's showup identification sufficiently meets all of the *Ramirez* reliability factors, we conclude that it was properly used to establish probable cause against Rivera and bind him over for trial on the aggravated robbery charges. Furthermore, the magistrate correctly viewed this evidence in favor of the prosecution.

■ In addition to Kilgrow's description of the robber and her showup identification of Rivera, the prosecution also introduced other evidence that supported the showing of probable cause. It presented the Ruger P85 9mm handgun that was found in Rivera's truck at the time of his arrest. The gun was especially significant, given Kilgrow's statements and testimony that the robber had shown her a handgun that was stuck in the waistband of his pants during the robbery. The prosecution also submitted evidence of Rivera's close proximity to the convenience store shortly after the robbery. Furthermore, it introduced evidence of his flight after Officer Hansen had signaled him to pull over. Although flight is not absolute proof of guilt, it may support a reasonable inference of guilt. *See State v. James*, 819 P.2d 781, 789 (Utah 1991) (stating evidence of flight may establish an inference of guilt). In sum, this additional evidence further supported the inference that Rivera committed the robbery at issue in this case.

■ In conclusion, the prosecution's evidence was sufficient to show probable cause and bind Rivera over for trial on the aggravated robbery charge. The prosecution was not required to prove Rivera's guilt beyond a reasonable doubt at the preliminary hearing. *See Anderson*, 612 P.2d at 783. Rather, it merely needed to "present a quantum of evidence sufficient to warrant submission of the case to the trier of fact." *Id.* In light of the foregoing, it is evident that the prosecution did this at the preliminary hearing. Accordingly, we affirm the trial court's denial of

Rivera's motion to quash the bindover on count I, aggravated robbery.

BENCH and BILLINGS, JJ., concur.