2011 UT App 205

**STATE of Utah, in the interest of D.N., a person under eighteen years of age.**

**D.N., Appellant,**

v.

**State of Utah, Appellee.**

**No. 20091045–CA.**

Court of Appeals of Utah.

June 30, 2011.

Elizabeth A. Lorenzo and Patrick W. Corum, Salt Lake City, for Appellant.

Mark L. Shurtleff and Ryan D. Tenney, Salt Lake City, for Appellee.

Before Judges DAVIS, McHUGH, and THORNE.

MEMORANDUM DECISION

THORNE, Judge:

¶ 1 After a preliminary hearing in juvenile court, appellant D.N. was bound over to district court on a charge of aggravated robbery, a first degree felony. *See* Utah Code Ann. § 76–6–302 (2008). On appeal to this court, D.N. argues that the bindover decision was improper because the State's evidence presented at the preliminary hearing failed to support a determination of probable cause. We affirm.

¶ 2 The charge against D.N. arises from the robbery of a Salt Lake City restaurant on August 13, 2009. Yajaira Morales was working behind the counter and observed D.N., who she initially thought to be a customer, entering the restaurant. D.N. was wearing baggy clothing and a baseball cap and pulled a black bandanna over his face up to the tip of his nose as he came through the door. He then pulled out a revolver, moved behind the counter, and demanded that Morales give him money from the cash register. Morales gave the money to D.N., and D.N. fled. Morales immediately called the police.

¶ 3 The police interviewed Morales regarding the robbery. She stated that D.N. had come within one to two feet of her and that she had paid particular attention to D.N.'s face, eyes, skin color, ethnicity, and "anything" else that she could remember. She described D.N. as a white male, "skinny," who looked American. She noted very specifically that D.N. had light blue or green eyes and that he did not have brown or black eyes. She explained that she had been the victim of a previous robbery and had learned to focus on details such as eye color in order to facilitate identification of a suspect by police.

¶ 4 Approximately one week after the robbery, D.N. was involved in an unrelated traffic stop. Based on the circumstances of the stop, officers suspected that D.N. might have been involved in the restaurant robbery. Officers compiled a photographic lineup consisting of black-and-white driver license photographs of six persons, including D.N. The lineup was shown to Morales, who immedi-

ately picked out D.N.'s photograph based in part on "the shape of his head." Morales circled D.N.'s picture and initialed her identification. Later, at D.N.'s preliminary hearing, Morales confirmed her belief that the photograph of D.N. in the lineup portrayed the restaurant robber. However, Morales did not specifically make an in-court identification of D.N. at the preliminary hearing.

¶5 D.N. argues that the juvenile court's decision to bind him over for trial based solely on Morales's identification of his photograph was error. The issue of whether a bindover is proper presents a mixed question of law and fact, "because a decision to bind a defendant over for trial includes the application of the appropriate bindover standard to the facts presented." *State v. Virgin*, 2006 UT 29, ¶27, 137 P.3d 787. However, the State need only "present sufficient evidence to support a reasonable belief" that the defendant committed the crime charged. *See id.* ¶20 (internal quotation marks omitted). Bindover is proper " '[u]nless the evidence is wholly lacking and incapable of reasonable inference to prove some issue which supports the [prosecution's] claim.' " *State v. Talbot*, 972 P.2d 435, 438 (Utah 1998) (alterations in original) (quoting *State v. Pledger*, 896 P.2d 1226, 1229 (Utah 1995)).

¶6 There is nothing so inherently unreliable about Morales's identification of D.N. that it will not support his bindover. *See State v. Robbins*, 2009 UT 23, ¶¶14–19, 210 P.3d 288 (adopting an "inherent improbability" standard for disregarding testimony); *Virgin*, 2006 UT 29, ¶25, 137 P.3d 787 (stating that a magistrate may "disregard or discount as incredible evidence that is not capable of supporting a reasonable belief" of a defendant's guilt in making a bindover determination). To the contrary, Morales's testimony bears significant indicia of reliability. D.N. came very close to Morales as he demanded money, and she testified to having paid a high degree of attention to the details of D.N.'s appearance. There is no suggestion that Morales's capacity to observe the

event was impaired. Further, she picked out D.N.'s picture immediately upon being shown the lineup and has never identified a suspect other than D.N. Nor do the circumstances of Morales's viewing of the lineup reveal improper coaching or suggestion by law enforcement. In light of her testimony, a jury could readily believe that D.N. had committed the crime charged. *See generally State v. Long*, 721 P.2d 483, 493 (Utah 1986) (listing factors for evaluating the reliability of eyewitness identification testimony).[1]

¶7 Nevertheless, D.N. contends that Morales's identification testimony contained a fatal inconsistency in that she testified that the robber had light blue or green eyes and that "they were not black or brown." In fact, D.N. has dark brown eyes. We recognize the central role that D.N.'s eye color played in Morales's identification testimony, but we do not conclude that the factual inconsistency renders the identification inherently unreliable or impossible. *See generally State v. Rivera*, 954 P.2d 225, 229 (Utah Ct.App.1998) ("[A]ny conflicts in [the witness's] description of [defendant's] height, the brand of his shoes, or the details of his hat were not significant enough to make her identification entirely unreliable."). For example, it is not inconceivable that D.N. could have altered his eye color at the time of the robbery through the use of theatrical contact lenses or that colored light reflecting off of D.N.'s eyes altered their perceived color. Ultimately, the juvenile court "properly left the resolution of such conflicts for the jury," *id.*, which could reasonably determine that Morales was simply mistaken as to one detail of D.N.'s appearance.

¶8 We also observe that the State presented other evidence suggesting that D.N. was involved in the robbery. D.N. was stopped by police following a similar robbery in West Valley City. The stop and subsequent search of the vehicle produced several bandanas matching the one described in the robbery, as well as a revolver. These items were found in a compartment hidden behind the car stereo. Although circumstantial, this evi-

---

1. D.N. also suggests that the reliability of Morales's identification is somehow affected by the fact that she did not directly identify D.N. at the preliminary hearing. However, at the preliminary hearing, Morales identified D.N. from his picture stating "that's ... the guy who robbed the place" when shown a copy of the lineup as an exhibit.

dence further supports a reasonable belief that D.N. was involved in the restaurant robbery.

¶ 9 In conclusion, the evidence presented by the State was sufficient to demonstrate probable cause that D.N. committed the charged robbery. Accordingly, we affirm the juvenile court's decision to bind D.N. over for trial in district court.

¶ 10 I CONCUR: JAMES Z. DAVIS, Presiding Judge.

¶ 11 I CONCUR IN THE RESULT: CAROLYN B. McHUGH, Associate Presiding Judge.