STATE of Utah, Plaintiff and Appellant,

v.

Burt J. WODSKOW, Defendant
and Appellee.

No. 940124–CA.

Court of Appeals of Utah.

May 18, 1995.

Christine F. Soltis (argued), Asst. Atty. Gen., Jan Graham, State Atty. Gen., Salt Lake City, for appellant.

Joan C. Watt (argued), Kristine M. Rogers, Salt Lake Legal Defender Ass'n, Salt Lake City, for appellee.

Before DAVIS, BILLINGS and GREENWOOD, JJ.

GREENWOOD, Judge:

The State of Utah appeals the district court's decision dismissing an order binding over Burt J. Wodskow on three counts of sexual abuse of a child, a second degree felony, in violation of Utah Code Ann. § 76–5–404.1 (1995). We reverse.

## BACKGROUND

Defendant owns and operates an amusement business, Laser Storm, located in Sandy, Utah. Laser Storm features a laser tag game in which players are outfitted with a laser gun and a power pack on a wide belt. The game is played in a darkened room under black lights, and players must wear black clothing so they are not seen by other players. For those players who did not wear dark clothing, defendant provided extra large, black tee-shirts. Players could conceal their light colored shorts by stepping into the neck of an extra large tee-shirt and tucking the neck of the shirt in under the waistband of their shorts.

On or about May 31, 1993, C.M., age ten, and some friends went to Laser Storm to play laser tag. C.M. had played the game before and knew to wear dark clothing. However, C.M.'s shorts had a visible white drawstring. Defendant asked C.M. to tuck in the drawstring so that it would not show up under the black lights. C.M. stated that when he did not respond, defendant reached down, grabbed the child's underwear and shorts and pulled both six to eight inches away from his waist. C.M. stated that defendant then looked down at C.M.'s penis for three-to-four seconds before tucking in the whole waistband, not just the drawstring. C.M. testified that defendant's actions made him feel "uncomfortable," but he was too scared to tell defendant to stop.

Immediately following a third game of laser tag, after everyone else had left, defendant approached C.M. in the darkened laser tag room. C.M. testified that he became scared "[b]ecause he [defendant] already did something" and "I didn't want him to do something again." Defendant asked C.M., "where's your belt?" Defendant then reached down and "grabbed [C.M.'s] balls" and "kind of squeezed" which "hurt." C.M. testified that defendant held on to his clothed genitals for one or two seconds. C.M. again was too scared to tell him to stop.

After the second incident, C.M. and his friends played some video games until a friend's mother came to pick them up. The next day, C.M. told his parents what had happened and they called the police.

On June 11, 1993, D.B. and T.W., both ten years old, went to Laser Storm. D.B. knew who defendant was because D.B. had tended defendant's children, and they attended the same church.

D.B. and T.W. had not been to Laser Storm before and did not know they needed to wear dark clothing. D.B. testified that he took off his shoes and shirt and began putting on the oversized black tee-shirt that defendant provided. D.B. stated he did not ask for any help but defendant approached him and began tucking the neck of the tee-

shirt into his shorts and underwear. As he did so, defendant put his hand down D.B.'s pants touching him skin-to-skin, and D.B. felt defendant touch his genitals. Defendant's hand moved in a tucking motion, and D.B. testified he could not remember how many times defendant touched his genitals. After the touching, D.B. thought that defendant was "gross or something."

T.W. watched while defendant tucked in D.B.'s shirt. T.W. testified he didn't believe he needed help tucking the shirt into his shorts, but defendant tucked in T.W.'s shirt also. As defendant did so, he put his hand under T.W.'s undershorts and touched his penis for about two seconds. According to T.W.'s testimony, defendant then tucked the shirt in back and touched T.W.'s "bottom with his hand and touched it for about one second." The touching made T.W. "feel like something wasn't right." T.W. told D.B. later that defendant was "gross."

D.B. and T.W. testified that after the game they played a video game until D.B.'s father picked them up. On the way home, D.B. and T.W. told D.B.'s father what had happened.

On June 18, 1993, defendant was charged with three counts of sexual abuse of a child, a second degree felony.[1] After a preliminary hearing, a circuit court commissioner, acting as a magistrate, bound defendant over for trial in district court on all three counts. The magistrate found that there was no "necessity for this stranger to touch these individuals." She further found defendant's conduct "clearly evidences" an intent to arouse or gratify sexual desire.

Pursuant to defendant's motion filed with the district court, the trial court dismissed the bindover order on the basis of lack of probable cause. The trial court, after reviewing a partial transcript of the preliminary hearing, concluded that there was no evidence that the children had experienced "substantial emotional or bodily pain" or that defendant intended to "cause such pain." The trial court observed that, after the encounters with defendant, the children, al-

---

**1.** Sexual abuse of a child requires either (1) an "intent to cause substantial emotional or bodily pain to any person," or (2) an "intent to arouse or gratify the sexual desire of any person." Utah Code Ann. § 76–5–404.1 (1995).

though uncomfortable and scared, did not "run screaming out of the building." The trial court stated there was no evidence to establish that defendant acted with the necessary intent to arouse or gratify the sexual desires of any person.

## ISSUES ON APPEAL

On appeal, the State raises the following issues:

(1) Did the district court err by using a prima facie standard of probable cause instead of a lesser Fourth Amendment standard, which the State argues is required by statute?

(2) Did the district court err by reviewing only an incomplete transcript, which did not include the magistrate's observations regarding the witnesses' demeanor and the boys' emotional damage?

(3) Did the district court err in finding insufficient evidence to bind defendant over for trial on the sexual abuse of a child charges? [2]

## STANDARD OF REVIEW

■ The issue of the correct legal standard for binding over a defendant at a preliminary hearing is one of law. *See State v. Humphrey*, 823 P.2d 464, 466 (Utah 1991). Thus, this question is reviewed de novo with no deference to the district court. *Id.*

■ The decision to bind a defendant over for trial is also a question of law, which is reviewed without deference. *Id.* However, a magistrate's factual findings may require some deference by a reviewing court. *See, e.g., State v. Anderson*, 612 P.2d 778, 786 (Utah 1980) ("the credibility of the witnesses is an important element in the determination of probable cause" in preliminary hearings).

## ANALYSIS

### I. Proper Probable Cause Standard

■ The State argues that the district court applied the wrong standard of probable

cause in finding insufficient evidence to bind defendant over for trial. However, because the State did not raise this issue below, it was not properly preserved, and we need not consider it. *Dansie v. Anderson Lumber Co.*, 878 P.2d 1155, 1158 n. 9 (Utah App. 1994). Moreover, we find there are no "exceptional circumstances." *See State v. Cook*, 881 P.2d 913, 914 (1994) (an appellate court may consider issues not raised below when "exceptional circumstances" effectively made it impossible for such an issue to be raised). Thus, we will not address the issue of the proper standard of probable cause. *See State v. Jaeger*, 896 P.2d 42, 45–46 (Utah App.1995).

### II. District Court's Review of Magistrate's Findings

The State claims that the district court erred in failing to properly defer to the magistrate's findings concerning the credibility of the witnesses. The trial court based its order on its review of a partial transcript of the preliminary hearing. This transcript omitted the magistrate's observations regarding the witnesses' demeanor and the emotional damage the boys experienced.

■ When considering a motion to dismiss a bindover, the district judge reviews the magistrate's order to determine whether the district court's jurisdiction was properly invoked. *State v. Humphrey*, 823 P.2d 464, 466 (Utah 1991). In doing so, the district court "need show no deference to the magistrate's legal conclusion," which is "implicit in the bindover order ... but may conduct its own review of the order." *Id.*

■ The magistrate may enter findings of fact and conclusions of law. Utah R.Crim.P. 7(h)(3). However, the degree to which a district court should defer to the factual findings of the preliminary hearing magistrate is unsettled in Utah. The Utah Supreme Court has stated that "consideration of a motion to quash a bindover order does not constitute 'appellate review' in a formal sense." *Hum-*

---

**2.** We do not reach this last issue because we find that the district court did not review a complete transcript and, therefore, could not have accord-

ed the proper deference to the magistrate's findings concerning witness credibility.

*phrey*, 823 P.2d at 466. However, the district court should give some deference to a magistrate's factual findings when the issues of credibility and the demeanor of the witnesses are important to finding probable cause. *See State v. Anderson*, 612 P.2d 778, 786 (Utah 1980) ("the credibility of the witnesses is an important element in the determination of probable cause" in preliminary hearings); *State v. Giles*, 576 P.2d 876, 879 (Utah 1978) (it was magistrate's "prerogative to believe whom he chose and to decide which witness was telling the truth and which one was falsifying").

■ In this case, the State argues that the trial court erred because it reviewed an incomplete transcript of the preliminary hearing, which lacked the magistrate's oral findings on the witnesses' credibility.[3] We agree. The district court could not properly review and subsequently reverse the decision of the magistrate because the complete record was not before the court. Accordingly, the district court's dismissal was error, and the bindover order of the magistrate should be reinstated.

## CONCLUSION

The district court erred as a matter of law in dismissing the magistrate's bindover order. In so concluding, we do not address the State's argument concerning the appropriate standard of probable cause at a preliminary hearing because that issue was not raised below, and we do not find any "exceptional circumstances." A magistrate's factual findings supporting a bindover order should be given some deference by the district court, especially when issues of credibility and the demeanor of witnesses are crucial to finding that the defendant committed the offense. However, because defendant did not provide the magistrate's findings of fact for review by the district court, the district court could not properly reverse the magistrate's bindover

decision. Accordingly, we reverse and remand for trial.

DAVIS, Associate P.J., and BILLINGS, J., concur.

---

3. Defendant argues that the State effectively waived this issue because it was the State's responsibility to present the full record to the district court for review. However, in attempting to dismiss a bindover order, the burden of proof is on the moving party, which in this case, of course, was defendant. *See State v. Geer*, 765 P.2d 1, 4 (Utah App.1988) (defendant failed to meet his burden of proof to dismiss indictment), *cert. denied*, 773 P.2d 45 (Utah 1989). It was defendant's responsibility to provide the complete record to the district court.