**STATE of Utah, Plaintiff and Appellant,**

v.

**Donald L. JAEGER, Defendant and Appellee.**

No. 910132–CA.

Court of Appeals of Utah.

May 18, 1995.

Christine F. Soltis (argued), Asst. Atty. Gen., Jan Graham, State Atty. Gen., Salt Lake City, for appellant.

Joan C. Watt (argued), Lisa J. Remal, Richard P. Mauro, Salt Lake Legal Defender Assoc., Salt Lake City, for appellee.

Before DAVIS, Associate P.J., and BILLINGS and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

The State of Utah appeals from a magistrate's dismissal of a criminal information charging Donald L. Jaeger with second degree murder in violation of Utah Code Ann. § 76–5–203 (1995). We reverse.

## BACKGROUND

On the evening of August 22, 1990, Jaeger arrived at his West Jordan home to find that Mary Barndt, his 19–year–old live-in girlfriend, was not home and had left her baby unattended in a bedroom. Jaeger was apparently concerned about Barndt's absence, and phoned her mother, expressing concern about Barndt's use of drugs. Jaeger said Barndt phoned him about 10:30 p.m., apparently from a bar or a party. Jaeger said that when Barndt arrived home about midnight, he expressed his disappointment in her because she had left the baby home alone, and because of her drug use and partying.

Jaeger said that he went to bed while Barndt spoke by telephone with her mother. During the conversation, Barndt cried and told her mother that Jaeger hated her and that things were not working out. She also told her mother that she had problems getting a job and that she needed to get away and work things out.

Shortly after that conversation, Barndt suffered a gunshot wound to the neck. Jaeger said that the shot awakened him, and he went into the kitchen to find Barndt lying on the floor. He called 911, and police officers and emergency workers soon arrived. Officers found a .22–caliber, semi-automatic hand gun lying on the floor near Barndt.

Barndt was taken to a hospital emergency room, where medical personnel unsuccessfully attempted to save her life. At the same time, police officers performed "GSR" or "paraffin" tests on Barndt's hands, which did not indicate any gunpowder residue. GSR tests performed on Jaeger's hands disclosed particles that were "characteristic" of GSR, but not unique.[1] Later test firings of the gun found near Barndt produced both unique and characteristic particles on the hands of test subjects. Police tested samples of particles from Jaeger's workplace. An officer testified that he believed one such particle was found to be characteristic of gunshot residue. Additionally, Jaeger apparently had blood on his hands from touching Barndt's wounds,

---

1. A particle is "characteristic" of gunshot power residue if it (1) contains lead along with either barium or antimony; (2) contains barium alone; or (3) contains antimony along with a limited number of other elements. By contrast, a particle is "unique" to gunshot residue when all three elements are found in the same particle.

and an expert from the state crime lab testified that it was possible that touching a wound could leave gunpowder residue on a person's hands.

The State charged Jaeger with second-degree murder in a felony information. A preliminary hearing was held on January 9, 1991 before Third Circuit Court Judge Michael L. Hutchings, who acted as magistrate pursuant to Rule 7 of the Utah Rules of Criminal Procedure (1991). At the preliminary hearing, the medical examiner who performed the autopsy on Barndt testified that, in his professional opinion, Barndt was the victim of a homicide. Based on the location of the wound over the clavicle, the path of the bullet, and the length of Barndt's arms, the examiner concluded that "the range from which the weapon was fired would be of a distance that would be very difficult for an individual to achieve to have a self-inflicted wound."

However, under cross examination, the medical examiner conceded that by turning the handgun around and placing the thumb instead of the index finger on the trigger, a subject could hold the gun farther away from his or her body.

On February 1, 1991, the court issued a memorandum opinion dismissing the information, concluding that the State had failed to prove probable cause to bind Jaeger over for trial. The magistrate stated that the State's case "hinged on" the GSR tests, which were "not reliable to provide critical linkage" to the crime. The magistrate also stated that the trajectory of the bullet was "very consistent" with a self-inflicted gunshot wound. "There is not a sufficient quantum of evidence presented to submit this case to a judge or jury," he concluded. "[N]o reasonable jury given the facts of this case before the court could find the defendant guilty of second degree murder."

## ISSUES ON APPEAL

The State raises the following issues on appeal:

(1) Did the magistrate err by using a prima facie standard of probable cause instead of a lesser Fourth Amendment standard required by statute?

(2) Did the magistrate err by improperly weighing the credibility of witnesses?

(3) Did the magistrate err in finding insufficient evidence to bind Jaeger over for trial on the murder charge?

## STANDARD OF REVIEW

The magistrate may enter findings of fact and conclusions of law. Utah R.Crim.P. 7(h)(3). However, the ultimate decision of whether to bind a defendant over for trial presents a question of law which we review de novo without deference. *State v. Humphrey,* 823 P.2d 464, 466 (Utah 1991).

## ANALYSIS

I. Statutory Change and Probable Cause.

The State argues that the magistrate applied the wrong standard of probable cause in finding insufficient evidence to bind Jaeger over for trial. The State notes that the probable cause needed for a bindover was traditionally based on a magistrate's finding that an offense had been committed and that the defendant was "guilty" of the offense. Utah Code Ann. § 77–15–17 (1978) (repealed). However, in 1980, the Utah Legislature amended the statute to state that a magistrate shall bindover after finding probable cause to believe that the defendant had "committed" the offense. Utah Code Ann. § 77–35–6(a) (1982) (repealed).[2] The State argues that because the term "committed" mirrors language defining a lesser standard of probable cause for issuing an arrest warrant, the 1980 amendment must have been intended to equate the standard of probable cause needed for a bindover with that needed for an arrest warrant. *See* Utah Code Ann § 77–7–5 (1995) ("A magistrate may issue a warrant for arrest upon finding probable cause to believe that the person to be arrested has *committed* a public offense.") (empha-

---

**2.** The substance of this provision is now contained in Rule 7(h)(2) of the Utah Rules of Crimi-

nal Procedure.

sis added). Thus, according to the State, the magistrate erred by failing to apply this lowered standard of probable cause in the Jaeger case.

■ However, the State failed to argue this issue before the magistrate. Thus, it was not properly preserved for appeal. *Dansie v. Anderson Lumber Co.*, 878 P.2d 1155, 1158 n. 9 (Utah App.1994). Moreover, we find no "exceptional circumstances" that justify consideration of the issue on appeal. *State v. Cook*, 881 P.2d 913, 914 (Utah App. 1994) (appellate court may consider issues raised for first time on appeal only when "exceptional circumstances" effectively made it impossible for such an issue to be raised below). Therefore, we decline to address it.[3]

### II. Sufficiency of Evidence.

The State argues that the magistrate erred because he improperly evaluated the credibility of witnesses and failed to view the evidence in a light most favorable to the State.

■ At a preliminary hearing, a magistrate must decide whether the prosecution has met its burden of presenting " 'a quantum of evidence sufficient to warrant submission of the case to the trier of fact.' " *State v. Easthope*, 668 P.2d 528, 531 (Utah 1983) (citation omitted). The magistrate also has the responsibility of "ferreting out groundless and improvident prosecutions." *State v. Anderson*, 612 P.2d 778, 783–84 (Utah 1980).

The State urges this court to apply to the magistrate the directed verdict standard utilized at trial. Under this standard, a judge must "consider the evidence in the light most favorable to the party against whom the motion is directed and resolve controverted

facts in his favor." *Cruz v. Montoya*, 660 P.2d 723, 728–29 (Utah 1983); *accord Price–Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*, 784 P.2d 475, 481 (Utah App.1989). Jaeger, however, argues that such an approach would "gut the role and importance of a preliminary hearing," making it a "meaningless gesture." [4]

These issues, although intriguing, need not be resolved in the present case. We find that the magistrate in this case erred not by failing to observe the proper evidentiary presumptions, but by deciding questions arising from credible, but conflicting evidence—questions that must be left to the fact-finder at trial. *See Price–Orem*, 784 P.2d at 481 (case may not be taken from jury if there is "any substantial dispute in the evidence").

■ The evidence presented at the preliminary hearing was inconclusive as to whether Barndt's death was a homicide or a suicide. In support of the second-degree murder charge, the State presented evidence that Jaeger had gunpowder residue on his hands, while Barndt did not. Additionally, the medical examiner testified that he believed Barndt's death was a homicide because it would have been difficult for her to have fired the gun from a distance and at an angle that would be consistent with the trajectory of the fatal wound. In response, the defense effectively attacked this evidence, pointing out that the GSR evidence was inconclusive and suggesting ways the wound could have been self-inflicted. Nonetheless, at the conclusion of the testimony, uncertainties concerning the cause of death remained and should have been left for the fact-finder to resolve at trial. The magistrate should not

---

3.  We note, however, that if we were to address this issue, we would be bound by Utah Supreme Court cases which apply the revised language. *See State v. Brickey*, 714 P.2d 644, 646 (Utah 1986); *State v. Easthope*, 668 P.2d 528, 531 (Utah 1983); *see also State v. Thurman*, 846 P.2d 1256, 1269 (Utah 1993) (appellate court bound by stare decisis).

4.  The State and Jaeger also spent a great deal of time, in their briefs and during oral argument, discussing the scope of the magistrate's authority to weigh witness credibility. Jaeger points out that the Utah Supreme Court has stated that the magistrate's responsibilities include assessing the

credibility of witnesses. *State v. Anderson*, 612 P.2d 778, 786 (Utah 1980) ("[T]he credibility of the witnesses is an important element in the determination of probable cause."); *State v. Giles*, 576 P.2d 876, 879 (Utah 1978) (magistrate has "prerogative to believe whom he chose and to decide which witness was telling the truth and which was falsifying"). The State, on the other hand, claims the magistrate's ability to weigh credibility should be limited to whether the witness's story is plausible, not whether the witness is generally credible. However, we need not address these questions to resolve the issues presented in this case.

have decided issues where the evidence was in conflict. *See Cruz*, 660 P.2d at 728–29 (weighing of evidence must be left to the jury). Thus, the magistrate erred as a matter of law.

## CONCLUSION

We conclude that the magistrate erred as a matter of law in dismissing the information charging Jaeger with second degree murder. In so concluding, we do not address the State's claim that the 1980 statutory change effectively lowered the standard of probable cause at a preliminary hearing because that issue was not raised below, and we do not find "exceptional circumstances" that would allow us to consider it. Nor do we address the arguments concerning the proper scope of the magistrate's authority when assessing the evidence. We conclude simply that the evidence was conflicting on a crucial point—the cause of death. Because this issue was unresolved, it should be left to the trier of fact. Thus, the magistrate erred in failing to bind Jaeger over for trial. Accordingly, we reverse and remand for trial.

BILLINGS, J., concurs.

DAVIS, Associate Presiding Judge (dissenting).

I respectfully dissent. Article I, section 13 of the Utah Constitution provides that a preliminary hearing shall be held in all cases prosecuted by an information, unless this hearing is waived by the defendant. The preliminary hearing is a "critical stage in the criminal process," *State v. Anderson*, 612 P.2d 778, 782 n. 9 (Utah 1980), designed to "relieve[ ] the accused from the substantial degradation and expense incident to a modern criminal trial when the charges against him [or her] are unwarranted or the evidence insufficient." *Id.* at 784. The Utah Supreme Court recognized in *Anderson* that while a preliminary hearing "is not a trial per se, it is not an ex parte proceeding nor one-sided determination of probable cause." *Id.* at 783. The court further noted,

> "In some cases, the evidence introduced in behalf of the defendant will do no more than raise a conflict which can best be resolved by a jury.... But, in other cases, the evidence elicited by defense counsel on cross-examination or from the testimony of defense witnesses or from other evidence may lead the examining magistrate to disbelieve the prosecution's witnesses and discharge the defendant for lack of probable cause."

*Id.* at 783 n. 19 (quoting *Myers v. Commonwealth*, 363 Mass. 843, 298 N.E.2d 819, 826 (1973)); *see also Myers*, 298 N.E.2d at 826 (" 'In determining whether ... [probable] cause exists, the judge may consider the credibility of the witnesses *and the quality of the evidence introduced.*' ") (emphasis added) (citation omitted).

The majority apparently believes that this case fits into the former category—a case in which the evidence elicited by the defendant raises a conflict to be resolved by the jury. This case is more appropriately placed within the latter category—a case in which the examining magistrate was led to "disbelieve the prosecution's witnesses and discharge the defendant for lack of probable cause." *See also State v. Wodskow*, 896 P.2d 29, 32 (Utah App.1995) ("[T]he ... [reviewing] court should give some deference to a magistrate's factual findings when the issue[ ] of credibility ... [is] important to finding probable cause.") (citing *Anderson*, 612 P.2d at 786).

The facts *observed* by the medical examiner are not in dispute. The magistrate has found that those facts do not support the medical examiner's conclusion and, therefore, his opinion is not credible. It was acknowledged in *Anderson* that "[i]n a proceeding such as the preliminary examination, ... the credibility of the witnesses is an important element in the determination of probable cause." *Id.* at 786. The magistrate also found that the gunpowder residue tests were a very poor quality of evidence due to the inexperience of the officers conducting the tests, the errors committed during the tests, and the inconclusive nature of the tests.

Therefore, considering the poor quality of the gunpowder residue tests and the incredible testimony of the medical examiner, the magistrate ruled that the State had not met its burden to establish a "quantum of evi-

dence" sufficient to warrant binding over the defendant for trial. "The fundamental purpose served by the preliminary examination is the ferreting out of groundless and improvident prosecutions." *Id.* at 783–84. The magistrate properly found that this was such a case. I would affirm.