**STATE of Utah, Plaintiff and Appellee,**

v.

**Glenna J. TALBOT, Defendant and Appellant.**

No. 970346.

Supreme Court of Utah.

Nov. 17, 1998.

Rehearing Denied Feb. 4, 1999.

Jan Graham, Att'y Gen., J. Frederic Voros, Jr., Asst. Att'y Gen., Salt Lake City, for plaintiff.

Ronald J. Yengich, Salt Lake City, for defendant.

ZIMMERMAN, Justice:

We granted Glenna J. Talbot's interlocutory appeal from a district court order denying her motion to quash a magistrate's bindover order. After a preliminary hearing, a magistrate bound Talbot over for trial on the charges of murder, a first degree felony, or in the alternative, child abuse homicide, a second degree felony. The trial court rejected Talbot's attack on the bindover. However, both the magistrate and the trial judge expressed some confusion about the appropriate bindover standard. We therefore granted an interlocutory appeal. Before us, Talbot contends that (i) the trial court erroneously believed it lacked the authority to quash the magistrate's bindover order for insufficient probable cause evidence and (ii) in the absence of the precedent created by the court of appeals' decision in *State v. Jaeger*, 896 P.2d 42 (Utah Ct.App.1995), the magistrate would have quashed the bindover for insufficient probable cause evidence. We affirm the refusal to quash.

We first set forth the facts and procedural history of this case before addressing the standard of review and our analysis. On March 9, 1995, three-year-old Tara Talbot ("Tara") was pronounced dead at Primary Children's Hospital. The State contends that Tara died as a result of abuse by her aunt, defendant Glenna Talbot ("Talbot"). Talbot, however, contends that Tara died as a result of head injuries caused by a fall from a bunk bed. Talbot was charged with murder, a first degree felony, in violation of section 76–5–203 of the Code, or in the alternative, child abuse homicide, a second degree felony, in violation of section 76–5–208. At Talbot's preliminary hearing, her counsel argued that there was insufficient evidence of probable cause to bind Talbot over for trial. The following facts were presented to the magistrate.

At 7:37 on the evening of March 8th, the Salt Lake County Sheriff's Office received a call from Talbot notifying them of an emergency. Arriving at the Talbot household, a deputy sheriff found Tara cool to the touch with her eyes fixed and dilated. Tara was transported by ambulance to a nearby elementary school and then life-flighted to Primary Children's Medical Center in Salt Lake City, where she died the next day.

At the time of her death, Tara had been living with her aunt for approximately three months. On the evening of March 8th, sometime between 6:00 and 6:30, Tara ate dinner at the Talbot household. After 6:30 p.m., the only people in the household were defendant; Amy Talbot, age 11; Heidi Talbot, age 9; and three toddlers, Richard Talbot, Tylan Talbot, and Michael Layman. During a police interview, Talbot stated that after dinner she gave Tara a bath and put her to bed in a bunk bed in the basement. Talbot stated that she then began bathing some of the other children. Talbot said that while bathing the other children she heard screaming downstairs. Upon investigating, she found Tara unconscious on the floor near the bunk bed.

Amy Talbot and Heidi Talbot were also interviewed by police. The girls stated that they heard a noise in the bedroom, went into the bedroom, and found Tara on the floor. They then summoned Talbot, who called 911. Their only explanation for how Tara was injured was that she had fallen out of the bunk bed. However, neither Amy nor Heidi was with Tara for a substantial period of time after dinner, nor were they present when Tara was put to bed.

At the preliminary hearing, the medical examiner testified that Tara died as a result of abnormal, massive craniocerebral injuries inflicted upon her by an outside force. He further testified that in his opinion Tara's injuries were inconsistent with a fall from 54 inches, the height of the bunk bed, although he could not exclude the possibility that Tara sustained the injuries in such a fall. The medical examiner also opined that none of the other children present in the house were capable of causing the injuries that Tara sustained.

The medical examiner also testified that in the three days before Tara died, she suffered several other nonfatal injuries. The examiner believed most of these wounds were equally consistent with being intentionally or accidentally caused. The examiner acknowl-

edged that Tara had a history of self-mutilation.

At the conclusion of the testimony, the magistrate denied Talbot's motion to dismiss and bound her over to stand trial in the district court. In denying the motion, the magistrate expressed concern about the application of *State v. Jaeger* to the case. He stated that "the Court would seriously reconsider the decision to bind this case over for trial in the absence of *Jaeger.*"

At the commencement of her trial in the district court, Talbot renewed her motion to dismiss or, in the alternative, to quash the bindover. On June 2, 1997, the district court denied that motion. The district court also expressed concern about its perception of *Jaeger*'s limitation of a trial court's authority to refuse a bindover, stating: "[The magistrate] has the same problem with *Jaeger* that I do.... [I]t unduly limits the magistrate at the preliminary examination." Accordingly, the district court certified that the interpretation of *Jaeger*, in light of the circumstances of the instant case, was appropriate for an interlocutory appeal. This court subsequently granted Talbot's petition for interlocutory appeal.

Talbot has framed the issue on appeal as follows: "Does the court of appeals' decision in *State v. Jaeger* 'establish new law for preliminary hearings, such that a district court lacks any authority to quash a magistrate's bindover order for insufficient probable cause evidence?'" Talbot contends that *Jaeger* is erroneous and asks us to overturn it. We reject Talbot's interpretation of *Jaeger.*

While Talbot acknowledges that *Jaeger* ostensibly reaffirms the right of a district court to quash a bindover order for insufficient probable cause evidence, Talbot claims that *Jaeger* is confusing for lower courts to apply and pushes them toward the conclusion that they lack authority to refuse a bindover for insufficient evidence. Talbot cites statements of both the magistrate and the district court as examples of this view.

The State argues that the issue raised by Talbot on this appeal is illusory. It asserts that the law is clear that a reviewing court does have the authority to quash a magistrate's bindover order and that here neither court actually concluded that it lacked the authority to dismiss the charges for insufficient evidence. While the magistrate and the trial court may have expressed concerns about the limitations on their authority to keep cases from going to trial, those concerns are equally applicable to decisions of this court and entirely compatible with *Jaeger.*

In substance, we agree with the State. However, since there seems to be some misunderstanding of the relevant standard, we again canvass the area and our precedents in light of the facts of this case. Talbot's appeal raises the following issues pertinent to the standard for establishing probable cause at a preliminary hearing: (i) the quantum of the evidence required to establish probable cause; (ii) the extent of the magistrate's freedom to review the credibility of evidence presented at the hearing; and (iii) the limitations on a magistrate's ability to choose between credible but conflicting evidence. We will address these issues in turn.

First, this court's decision in *State v. Pledger*, 896 P.2d 1226 (Utah 1995), issued two weeks after *Jaeger*, clearly sets forth the quantum of evidence that must be produced at a preliminary hearing to bind a defendant over for trial. Under *Pledger*, the prosecution must present evidence sufficient for the magistrate to find "[p]robable cause to believe that 'the crime charged has been committed and that the defendant has committed it.'" *Id.* at 1229 (quoting Utah R.Crim. P. 7(h)(2)). Furthermore, "'[t]he prosecution is not required to introduce enough evidence to establish the defendant's guilt beyond a reasonable doubt, but must present a quantum of evidence sufficient to warrant submission of the case to the trier of fact.'" *Id.* (quoting *State v. Anderson*, 612 P.2d 778, 783 (Utah 1980)). This probable cause standard "is lower, even, than a preponderance of the evidence standard applicable to civil cases." *Id.*

*Pledger* further stated that in determining whether this standard of probable cause has been satisfied, "the magistrate should view the evidence in a light most favorable to the

prosecution and resolve all inferences in favor of the prosecution." *Id.* Additionally, " '[u]nless the evidence is wholly lacking and incapable of reasonable inference to prove some issue which supports the [prosecution's] claim,' the magistrate should bind the defendant over for trial." *Id.* (quoting *Cruz v. Montoya,* 660 P.2d 723, 729 (Utah 1983)).

Under *Pledger* then, to survive a motion to quash a bindover, the State must produce enough evidence sufficient to survive a motion for a directed verdict with respect to each element of the crime. *See id.* Since both a directed verdict and a motion to quash serve gatekeeping functions, it is sensible for them to share a common standard.

Moving on to the second issue—the extent to which a magistrate may review the credibility of evidence presented at a preliminary hearing—this court has recognized that "the credibility of the witnesses is an important element in the determination of probable cause." *Anderson,* 612 P.2d at 786. Certainly, precluding a magistrate from disregarding facially incredible evidence would undermine the "fundamental purpose served by the preliminary examination [which] is the ferreting out of groundless and improvident prosecutions." *Id.* at 783–84. Nevertheless, the magistrate's evaluation of credibility at a preliminary hearing is limited to determining that " 'evidence is wholly lacking and incapable of reasonable inference to prove some issue which supports the [prosecution's] claim.' " *Pledger,* 896 P.2d at 1229 (quoting *Cruz,* 660 P.2d at 729). In ruling on a directed verdict, "the trial court may not weigh evidence." *Cruz,* 660 P.2d at 728. Likewise, a magistrate at a preliminary hearing is precluded from evaluating the weight of otherwise credible evidence.

Finally, we address the third issue raised by Talbot—the limitations on a magistrate's weighing conflicting credible evidence. The preliminary hearing serves several purposes. First, and most importantly, it protects the accused from going to trial when the evidence presented is insufficient to establish probable cause. *See Anderson,* 612 P.2d at 784. Second, and independently, the preliminary hearing acts as a discovery device advising the accused of the details of the charges

and preserving favorable evidence. *See id.* "Preliminary examinations in Utah are adversarial proceedings...." *Id.* at 782. Therefore, conflicting evidence may be expected. As is appropriate in an adversarial proceeding, "the accused is granted a statutory right to cross-examine the witnesses against him, and the right to subpoena and present witnesses in his defense." *Id.* at 783.

Nevertheless, while conflicting evidence may be anticipated at a preliminary hearing because of its adversarial nature, the magistrate's role in evaluating that evidence is limited. This is not a trial on the merits, only a gateway to the finder of fact. Therefore, "the magistrate should view the evidence in a light most favorable to the prosecution and resolve all inferences in favor of the prosecution." *Pledger,* 896 P.2d at 1229. In that light, the court of appeals in *Jaeger* correctly held that at a preliminary hearing, conflicts between "credible, but conflicting evidence . . . must be left to the fact-finder at trial." *Jaeger,* 896 P.2d at 45. We therefore conclude that *Jaeger* does not establish new law for preliminary hearings. At the same time, neither *Jaeger* nor our own cases suggest, as Talbot argues, that a district court lacks any authority to quash a bindover order for insufficient probable cause evidence. We acknowledge that both the magistrate and the district court expressed difficulty in reconciling and applying *Jaeger* to the case at hand. To the extent that the magistrate or district court read *Jaeger* as preventing them from granting a motion to quash a bindover, we correct that impression.

Applying the principles set forth above to the facts of this case, we conclude that the magistrate did not err in binding Talbot over for trial. Under cross-examination, the medical examiner could not conclude to a medical certainty that Tara's injuries were the result of human causes instead of a fall from her bunk bed. However, this fact does not call into question the examiner's opinion that Tara's death was the result of "massive craniocerebral injuries inflicted upon her by an outside human force," to a degree that the opinion would not support a jury verdict. The evidence was sufficient to

establish probable cause. The State presented evidence that Talbot was the only adult present with the capacity to inflict the injuries Tara sustained. The law required that "the magistrate ... view the evidence in a light most favorable to the prosecution and resolve all inferences in favor of the prosecution." *Pledger*, 896 P.2d at 1229. In the instant case, as in *Jaeger*, uncertainty regarding the cause of death remained at the conclusion of the testimony. Those uncertainties "should [be] left for the fact-finder to resolve at trial." *Jaeger*, 896 P.2d at 45; *see also Cruz*, 660 P.2d at 728–29.[1] This done, a bindover was proper.

Affirmed.

Chief Justice HOWE, Associate Chief Justice DURHAM, Justice RUSSON, and Judge BENCH concur in Justice ZIMMERMAN's opinion.

Justice STEWART does not participate herein; Court of Appeals Judge RUSSELL W. BENCH sat.

---

1. At oral argument, it appeared that the concerns of the courts below may have been with the scientific foundation for the examiner's conclusion that Tara died as a result of shaken baby syndrome. However, defense counsel had not mounted a *Rimmasch* challenge to the scientific basis for the testimony, as he was free to do. *See State v. Rimmasch*, 775 P.2d 388 (Utah 1989). There is nothing in *Jaeger* or in *Pledger* that in any way diminishes the right of defense counsel to attempt to exclude expert opinions at preliminary hearings on grounds that they lack proper scientific foundation. However, absent a finding that the scientific basis for an opinion is insufficient to make it admissible, doubts about the science alone cannot support a judge's conclusion that the expert's testimony lacks "credibility" and therefore does not support a bindover.