2002 UT 26

**STATE of Utah, Plaintiff and Appellee,**

v.

**Daniel Marion SCHROYER, Jr., Defendant and Appellant.**

**No. 20000877.**

Supreme Court of Utah.

March 8, 2002.

Mark L. Shurtleff, Att'y Gen., Marian Decker, Asst. Att'y Gen., Kenneth W. Updegrove, Salt Lake City, for plaintiff.

Heather Johnson, Lynn R. Brown, Salt Lake City, for defendant.

DURHAM, Justice.

## INTRODUCTION

¶ 1 Defendant Daniel Schroyer (Schroyer) and co-defendant Jordhan Swank (Swank) were charged with the aggravated murder of Robby Benzon (Benzon), a capital offense, in violation of Utah Code Ann. § 76–5–202(1) (1999) and attempted aggravated murder of Thomas Majnik (Majnik), a first degree felony, in violation of Utah Code Ann. § 76–5–202(1) and § 76–4–102(1) (1999). The attempted aggravated murder charge was later dismissed.

¶ 2 At the preliminary hearing, defendant was bound over for trial after the magistrate found probable cause to believe that he intentionally committed homicide. The magistrate also found probable cause to believe that the commission of the murder was aggravated by two circumstances identified in Utah Code Ann. § 76–5–202(1)(b) and (c). Defendant's motion to quash the bindover order with the district court was granted in part and denied in part.

¶ 3 Defendant entered a conditional guilty plea to aggravated murder on April 24, 2000, preserving his right to appeal the district court's refusal to quash the bindover. After he was sentenced to life in prison, defendant appealed.

## BACKGROUND

¶ 4 On the night of September 13, 1999, defendant and his friend Swank spent the evening together. That same night two other friends, Benzon and Majnik, were out driving around. Near midnight, somewhere in Salt Lake City, Benzon requested that Majnik pull into a residential driveway. Benzon went into the house for several minutes. When Benzon returned, he asked Majnik if he would drive two of his friends, defendant and Swank, to Murray. Majnik agreed and the two men entered the rear of the car with defendant seated behind Majnik and Swank seated behind Benzon.

¶ 5 Loud music was playing in the car. At some point, defendant pulled a gun out of his waistband and held it to the left side of Benzon's head. Swank could see defendant talking, but couldn't hear what he was saying. Majnik heard a "pop," thought it was a firecracker, then looked over and saw Benzon "kind of slumped forward" with "blood drizzling from the side of his head." Majnik testified that defendant said, "[T]hat's right, he's—that's right, he's dead, mother F'er." Defendant put the gun to the back of

Majnik's head and told him to keep driving. He continued to drive for a short period of time, and Majnik testified that for at least part of the time, the gun was at the back of his head.

¶ 6 Defendant instructed Majnik to pull over. Majnik stopped the car and got out. He testified that defendant got out of the car and then pointed the gun at him. Majnik stepped aside, grabbed the gun's barrel and held it to defendant's chest. He told defendant, "You're a dead mother F'er when I get this gun." Defendant then yelled to Swank, "[s]hoot him." Swank shot Majnik several times, hitting him twice. Swank testified that he would not have shot Majnik if defendant had not told him to do so. Majnik fell to the ground and both defendant and Swank ran off. Majnik survived; Benzon did not.

¶ 7 As they ran from the scene, defendant and Swank got rid of their guns. They became separated, but met the next day at a friend's house. Swank asked defendant why he shot Benzon, and defendant answered that Benzon "laughed and didn't take him serious."

## STANDARD OF REVIEW

¶ 8 "The determination of whether to bind a criminal defendant over for trial is a question of law." *State v. Clark*, 2001 UT 9, ¶ 8, 20 P.3d 300, 303. Accordingly, this Court reviews that determination without deference to the court below. *Id.*

## ANALYSIS

### SUFFICIENCY OF EVIDENCE TO ESTABLISH PROBABLE CAUSE

¶ 9 Defendant argues on appeal that the testimony of Majnik and Swank "did not establish the elements of aggravating circumstance or of intent sufficient to bind [defen-

dant] over on the charge of aggravated murder." Specifically, defendant complains that the State failed to establish probable cause either that he intended to murder Benzon or that he attempted to kill Majnik as part of the same criminal episode, an aggravating circumstance under Utah Code section 76–5–202(1)(b) (1999).[1]

¶ 10 At a preliminary hearing "the prosecution must present evidence sufficient for the magistrate to find [p]robable cause to believe that the crime charged had been committed and that the defendant has committed it." *State v. Talbot*, 972 P.2d 435, 437 (Utah 1999) (citations and internal quotations omitted). The evidence must be viewed "in a light most favorable to the prosecution" with all inferences resolved in the prosecution's favor. *Id.* at 437–38 (citations and internal quotations omitted). The defendant should be bound over for trial "[u]nless the evidence is wholly lacking and incapable of reasonable inference to prove some issue which supports the [prosecution's] claim...." *Id.* (citations omitted).

¶ 11 Recently, in *State v. Clark*, 2001 UT 9, ¶ 16, 20 P.3d 300, this court clarified that the "quantum of evidence necessary to support a bindover is less than that necessary to survive a directed verdict motion." While the prosecution must produce "believable evidence of all the elements of the crime charged" in order to sustain its burden at the preliminary hearing stage, "unlike a motion for a directed verdict, this evidence need not be capable of supporting a finding of guilt beyond a reasonable doubt." *Id.* at ¶ 15 (citations and internal quotation omitted).

### A. *Probable Cause for Intentional Action*

¶ 12 The State must prove defendant intentionally or knowingly caused Benzon's death, plus an aggravating circumstance, to establish aggravated murder. Utah Code Ann. § 76–5–202(1). Defendant's

---

1. Subsection 1(b) reads: "the homicide was committed incident to one act, scheme, course of conduct, or criminal episode during which two or more persons were killed, or during which the actor attempted to kill one or more persons in addition to the victim who was killed[.]" Defendant is liable for Swank's shooting of Majnik as a party under Utah Code section 76–2–202 (1999),

which reads: "Every person acting with the mental state required for the commission of an offense who directly commits the offense, who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct."

contention—that the trial court erred in denying his motion to quash the bindover order because his evidence at the preliminary hearing supports a theory of accidental shooting—misses the point. At this stage of the proceedings, all that the State must do is establish that its theory of intentional homicide is reasonable. *Clark,* 20 P.3d 300, 2001 UT 9 at ¶ 20. The trial court found ample evidence for the State's theory of intentional shooting, including defendant's (1) making no comments or statements indicating the shooting was accidental, (2) taking no steps to seek medical treatment for Benzon, (3) stating to Majnik, "That's right, he's dead, mother F"er," and (4) telling Swank that he shot Benzon because "[he] laughed and didn't take him serious."

¶ 13 Viewed in the light most favorable to the prosecution, and drawing all reasonable inferences in the prosecution's favor, these facts, among others relied on by the magistrate, support the State's theory of intentional homicide presented at the preliminary hearing. We therefore affirm the trial court's denial of defendant's motion to quash the bindover on this ground.

### B. Probable Cause that Crimes Were Committed Incident to One Criminal Episode

¶ 14 Defendant was charged with aggravated murder based on the State's theory that he intended to shoot Benzon and also was a party to the attempted murder of the driver, Majnik, during the same criminal episode, constituting an aggravating circumstance under section 76–5–202(1)(b). Conviction under the "criminal episode" portion of the statute requires the prosecution to establish that the conduct giving rise to the crimes in question is "incident to an attempt or an accomplishment of a single criminal objective," and involved acts closely related in time. *State v. Alvarez,* 872 P.2d 450, 459 (Utah 1994); *see also* Utah Code Ann. § 76–1–401 (1999). Defendant argues that the two incidents were not closely related in time, that he acted in self-defense in Majnik's shooting, and that therefore he did not commit the crimes as part of one criminal episode for purposes of section 76–5–202(1)(b).

### 1. Close Relationship in Time

¶ 15 The trial court stated in its memorandum decision that "defendant does not argue against the temporal proximity of the murder of Benzon and the attempted murder of Majnik." Defendant acknowledges in his appeal to this court that he did not make an argument regarding the relationship in time of the two incidents to the trial court. Yet, without arguing the existence of exceptional circumstances, he has now argued for the first time that "these two incidents are not closely related in time for purposes of the *Alvarez* definition." We will not decide this question. *See State v. Pledger,* 896 P.2d 1226, 1229 n. 5 (Utah 1995) (declining to reach issue defendant did not raise in motion to quash bindover, where defendant did not argue the existence of "exceptional circumstances" on appeal). Even if we were to address the substance of defendant's newly-minted argument, it is a non-starter. The murder and attempted murder occurred within five to ten minutes of each other, clearly demonstrating a close temporal connection. *See Alvarez,* 872 P.2d at 459 (holding two murders committed during five minutes of fighting were closely related for section 76–5–202(b)(1) purposes); *see also State v. Valdez,* 748 P.2d 1050, 1052, 1054 (Utah 1987) (holding that two homicides committed within approximately an hour-and-a-half period of time could satisfy section 76–5–202(1)(b)).

### 2. Single Criminal Objective

¶ 16 The State argued to the trial court that the attempt to murder Majnik was to prevent him from being able to testify about Benzon's murder, thus linking the two crimes in one criminal episode. The trial court found that (1) Majnik did indeed witness Benzon's murder, (2) he could identify defendant's and Swank's faces, and therefore could identify defendant as Benzon's killer, and (3) defendant ran from the crime scene and hid his gun, indicating that he was trying to hide the crimes, conduct "which is also consistent with witness elimination." The trial court found that viewing the facts "in a light most favorable to the prosecution, ...

the magistrate justifiably concluded that the defendant attempted to kill Majnik ... to eliminate him as a witness to the murder of Benzon and ... that the acts constituting the murder and attempted murder were bound together by a single criminal objective." The trial court then appropriately cited the case of *State v. Lopez*, 789 P.2d 39, 42 (Utah App.1990), which held, in the context of joinder and severance, that murder coupled with another crime to avoid responsibility for the murder constitutes a "single criminal objective" linking the two offenses together (as long as the time element is satisfied).

¶ 17 We affirm the trial court's finding that the two crimes constituted one criminal episode.

### CONCLUSION

¶ 18 We affirm the trial court's denial of defendant's motion to quash the bindover order, as well as defendant's conviction of aggravated murder. The trial court properly found that probable cause existed to believe that defendant intended to shoot Benzon and that defendant's attempted aggravated murder of Majnik was part of the same criminal episode.

¶ 19 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURRANT, and Justice WILKINS concur in Justice DURHAM'S opinion.