2004 UT App 251

**STATE of Utah, Plaintiff and Appellant,**

v.

**Cory Eugene VIRGIN, Defendant and Appellee.**

No. 20030276–CA.

Court of Appeals of Utah.

July 22, 2004.

Mark L. Shurtleff, Attorney General, and Kris C. Leonard, Assistant Attorney General, Salt Lake City, for Appellant.

Larry R. Keller and Christian Cannon, Cohne Rappaport & Segal, Salt Lake City, for Appellee.

Before Judges BILLINGS, GREENWOOD, and ORME.

## OPINION

BILLINGS, Presiding Judge:

¶ 1 The State of Utah appeals a magistrate's dismissal of an information against Cory Virgin (Defendant) on one count of aggravated sexual abuse of a child, a first degree felony, in violation of Utah Code Annotated section 76-5-404.1 (1999). We reverse.

## BACKGROUND

¶ 2 On Tuesday, March 6, 2000, Defendant and his girlfriend, Rebecca Stewart, babysat Stewart's four-year-old niece, M., while M.'s parents were away for the evening.[1] At some point in the evening, Stewart, Defendant, and M. went downstairs to play with blocks and Barbie dolls. While playing downstairs, Defendant excused himself to go upstairs to use the bathroom. Shortly after, M. left to go upstairs to find Barbie clothes. Upon returning, M. did not act unusual or distraught in any way, nor did she mention anything to Stewart about what occurred while upstairs. Stewart and Defendant then put M. to bed.

¶ 3 The next day, M. repeatedly said the words "vagina" and "penis" to her mother, saying that she learned those words from Defendant. The following day, M.'s parents took M. to St. George on vacation. While traveling, M. told her mother that while Stewart and Defendant were babysitting, Defendant put his finger in her bottom. On March 9, 2000, M.'s parents took M. to the Washington County Children's Justice Center in St. George where she was examined by Dr. Kerri Smith. M. told Dr. Smith that while she was upstairs in the bathroom, Defendant came in, pulled her underwear down, and put his finger in her bottom. M. also told Dr. Smith that Defendant had showed her a picture of a penis. Upon physical

examination of M., the doctor concluded that there was no evidence of any abnormality, but that such a conclusion was not inconsistent with sexual abuse.

¶ 4 After the family returned to Salt Lake City, Detective Scott Stevens interviewed M. (2000 interview). During the 2000 interview, M. told Detective Stevens that Defendant had pulled her into the bathroom, where she pulled her pants down to go to the bathroom. M. stated that after she had gone to the bathroom, Defendant put his finger in the middle of her bottom and told her about penises and vaginas.

¶ 5 During the 2000 interview, M. did not mention that Defendant had showed her a picture of a penis. She said that Defendant then helped her button up her pants. M. also said that after leaving the bathroom, Defendant, Stewart, and she "played bottom," where "you tried to touch somebodies [sic] bottom when you ... try to touch their pants and their bottom." After playing "bottom," M. said that they returned downstairs to play Barbie, where she told Stewart about what had occurred. M. said that Stewart responded by saying, "Uh-oh," and told Defendant he "did a no-no." Stewart denies ever playing "bottom" with M. and also denies that M. told her about the alleged incident that night. M. also told Detective Stevens that she did not tell her mother immediately because Defendant said, "Don't tell your mom;" however, M. later told her mother on the way to St. George.

¶ 6 On April 6, 2000, M.'s pediatrician, Dr. Mooers, examined M. in Salt Lake City. M. told Dr. Mooers that Defendant had touched her between her legs. M. also told Dr. Mooers that Defendant had exposed himself to her and showed her a picture of a penis. Detective Stevens did not pursue the case in 2000.

¶ 7 In 2002, Detective Beckstrand reactivated the case and conducted another interview with M. (2002 interview). During the 2002 interview, M. told Detective Beckstrand that she had gone upstairs to "go potty" in the bathroom between her room and her

---

1. Defendant and Stewart also babysat M.'s brother, J., who was two at the time.

brother's room. M. stated that while she was pulling her pants up, Defendant touched her bottom. M. did not mention anything about Defendant talking about or showing pictures of a penis or vagina. M. said she did not tell Stewart about the incident because she was too afraid and that the first person she told was her mother.

¶ 8 Defendant was charged with aggravated sexual abuse of a child, pursuant to Utah Code Annotated section 76–5–404.1 (1999), a first degree felony. A preliminary hearing was held before the Honorable Darwin C. Hansen. After hearing the testimony from Detective Stevens, Detective Beckstrand, and Stewart, and reviewing the transcripts from the 2000 and 2002 interviews of M. and the reports from Dr. Smith and Dr. Mooers, Judge Hansen, sitting as a magistrate, dismissed the information for lack of probable cause. The State appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 There are two issues on appeal. First, whether this court has jurisdiction to hear prosecutorial appeals from a magistrate's decision not to bind a defendant over for trial for lack of probable cause. Jurisdiction is a question of law. *See Department of Soc. Servs. v. Vijil,* 784 P.2d 1130, 1132 (Utah 1989). Second, whether the magistrate erred in finding insufficient evidence to bind defen-

dant over for trial for aggravated sexual abuse of a child. Whether to bind a defendant over for trial is a question of law, "which we review de novo without deference." *State v. Jaeger,* 896 P.2d 42, 44 (Utah Ct.App.1995).[2]

## ANALYSIS [3]

¶ 10 The State argues that the magistrate erred by not binding Defendant over for trial because the evidence establishes probable cause to believe that Defendant committed aggravated sexual abuse of a child under Utah Code Annotated section 76–5–404.1 (1999). We agree.

### A. Legal Standard

¶ 11 At the preliminary hearing, the prosecution does not have to prove guilt beyond a reasonable doubt. *See State v. Clark,* 2001 UT 9, ¶ 15, 20 P.3d 300. The purpose of a preliminary hearing is " 'ferreting out . . . groundless and improvident prosecutions.' " *Id.* at ¶ 16 (quoting *State v. Anderson,* 612 P.2d 778, 783–84 (Utah 1980)). It is "not a trial on the merits, only a gateway to the finder of fact." *State v. Talbot,* 972 P.2d 435, 438 (Utah 1998). Therefore, the prosecution only need produce " 'evidence sufficient for the magistrate to find probable cause to believe that the crime

---

2. Defendant also asserts that the State failed to marshal the evidence supporting the magistrate's factual findings underlying the dismissal. A party seeking review of a fact-finder's findings "must marshal all relevant evidence presented at trial which tends to support the findings and demonstrate why the findings are clearly erroneous." *West Valley City v. Majestic Inv. Co.,* 818 P.2d 1311, 1313 (Utah Ct.App.1991). Defendant is correct that a reviewing court should give "some deference to a magistrate's factual findings when the issues of credibility and the demeanor of the witnesses are important to finding probable cause." *State v. Wodskow,* 896 P.2d 29, 32 (Utah Ct.App.1995). In this case, however, the magistrate did not make any factual findings regarding witness demeanor or credibility. The magistrate merely determined that the evidence was "wholly lacking and incapable of any reasonable inference that would support a bindover." We review the magistrate's decision to bind over a defendant without deference, and therefore, there is no evidence for the State to marshal. *See State v. Jaeger,* 896 P.2d 42, 44 (Utah Ct.App.1995).

3. Defendant argues that this court lacks jurisdiction to hear a prosecutorial appeal from a dismissal of an information because neither the Utah Constitution nor any Utah statute grants such jurisdiction. We disagree. Under Utah Code Annotated section 77–18a–1 (2003), "[a]n appeal may be taken by the prosecution from: (a) a final judgment of dismissal, including a dismissal of a felony information following a refusal to bind the defendant over for trial." This statute clearly gives us jurisdiction. Furthermore, Defendant's argument that the failure to bind over is not an appealable order was resolved in *State v. Jaeger,* 886 P.2d 53 (Utah 1994), in which the Utah Supreme Court interpreted Utah Code Annotated section 77–18a–1 to grant this court jurisdiction for such an appeal when the State does not intend to refile the charge given the mandate of *State v. Brickey,* 714 P.2d 644, 647–48 (Utah 1986). *See Jaeger,* 886 P.2d at 55.

charged had been committed and that the defendant has committed it.' " *State v. Schroyer*, 2002 UT 26, ¶ 10, 44 P.3d 730 (quoting *Talbot*, 972 P.2d at 437).[4] However, "the prosecution must produce 'believable evidence of all the elements of the crime charged' to sustain its burden at the preliminary hearing stage." *Id.* at ¶ 11 (quoting *State v. Clark*, 2001 UT 9, ¶ 15, 20 P.3d 300). " 'The defendant should be bound over for trial unless the evidence is wholly lacking and incapable of reasonable inference to prove some issue which supports the [prosecution's] claim.' " *Id.* at ¶ 10 (alterations in original) (quoting *Talbot*, 972 P.2d at 438). Moreover, the magistrate should "view the evidence in a light most favorable to the prosecution and resolve all inferences in favor of the prosecution." *Talbot*, 972 P.2d at 437–38 (quotations and citation omitted).

▆▆▆▆ ¶ 12 The State argues that the magistrate erred in making determinations about evidence credibility. "[T]he magistrate's role in this process, while limited, is not that of a rubber stamp for the prosecution." *Clark*, 2001 UT 9 at ¶ 10, 20 P.3d 300 (quotations and citation omitted). The magistrate must make evidence credibility determinations, otherwise the " 'fundamental purpose served by the preliminary examination [which] is the ferreting out of groundless and improvident prosecutions' " would be undermined. *Talbot*, 972 P.2d at 438 (quoting *Anderson*, 612 P.2d at 783–84). "Nevertheless, the magistrate's evaluation of credibility at a preliminary hearing is limited to determining that 'evidence is wholly lacking and incapable of reasonable inference to prove some issue which supports the [prosecution's] claim.' " *Id.* (quoting *State v. Pledger*, 896 P.2d 1226, 1229 (Utah 1995)). Further, when a magistrate is confronted with credible but conflicting evidence, the magistrate should " 'view the evidence in a light most favorable to the prosecution and resolve all inferences in favor of the prosecution.' " *Id.* (citation omitted).

## B. The Evidence

¶ 13 To prove sexual abuse of a child, a second degree felony, the State must show that (1) the victim was younger than fourteen years old; (2) "the actor touche[d] the anus, buttocks, or genitalia" of such a child; and (3) the actor intended "to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant." Utah Code Ann. § 76–5–404.1(1), (2). The crime becomes aggravated to a first degree felony if one of the aggravating factors is found, including that "the offense was committed by a person who occupied a position of special trust in relation to the victim." *Id.* § 76–5–404.1(4)(h). The issue on appeal is the correctness of the magistrate's determination that the evidence, when viewed in a light most favorable to the prosecution, is insufficient to support a reasonable belief that Defendant touched M. with the requisite intent.

¶ 14 The evidence of the alleged touching is M.'s statements made to several people over a period of two years. In this case, the magistrate found that the "evidence lacks sufficient credibility and reliability." The magistrate, in large part, based his decision on the inconsistencies in the victim's testimony and its divergence on extraneous facts from the statements of other witnesses. The magistrate noted that there was also "no corroborative evidence of the alleged touching." However, the State correctly argues that physical evidence is not required to establish sexual abuse. *See State v. Archuleta*, 747 P.2d 1019, 1021 (Utah 1987) (upholding rape conviction based solely on child's testimony, without any physical evidence).

¶ 15 M.'s statements contain both consistencies and inconsistencies. The consistencies, however, go to the core elements of the crime and are quite consistent considering that the victim was four years old at the time of the initial interview and that the second interview was two years later. In particular,

---

4. In *State v. Clark*, 2001 UT 9, 20 P.3d 300, the Utah Supreme Court held that there is no difference "between the arrest warrant probable cause standard and the preliminary hearing probable cause standard." *Id.* at ¶ 16. Thus, "at the arrest warrant and the preliminary hearing stages, the prosecution must present sufficient evidence to support a reasonable belief that an offense has been committed and that the defendant committed it." *Id.*

M. had consistently (1) identified Defendant as the perpetrator, (2) stated that Defendant touched her bottom with his finger, (3) identified the location of the alleged incident as the upstairs bathroom, and (4) stated she was playing Barbie downstairs with Stewart and Defendant before the incident. Further, it is not disputed that M. and Defendant were upstairs while Stewart remained downstairs.

¶ 16 While inconsistencies in M.'s statements may well weaken her credibility, M. is consistent about the most important elements of the alleged crime: first, Defendant was the perpetrator, and second, Defendant touched her bottom with his finger. Moreover, M. began using the words "vagina" and "penis" the day after the alleged incident, which tends to lend credence to her statements.

¶ 17 To prevail at the preliminary hearing, the State must also show probable cause to believe that Defendant had the requisite intent. To show probable cause for intent, the State must only prove that its theory of intent is reasonable. *See State v. Schroyer*, 2002 UT 26, ¶ 12, 44 P.3d 730 ("At this stage of the proceedings, all that the State must do is establish that its theory of intentional homicide is reasonable."); *Clark*, 2001 UT 9 at ¶ 20, 20 P.3d 300 (holding that regardless of whether the facts could support a reasonable inference of innocence, if the facts also support a reasonable inference of guilt, the State has shown probable cause); *State v. Hall*, 946 P.2d 712, 724 (Utah Ct. App.1997). " '[S]o long as there is some evidence, including reasonable inferences, from which findings of all the requisite ele-

ments of the crime can reasonably be made, our inquiry stops.' " *Hall*, 946 P.2d at 715 (quoting *State v. Lactod*, 761 P.2d 23, 27 (Utah Ct.App.1988)).

¶ 18 In this case, M. alleges that Defendant touched her in the middle of her "bottom" with his finger. It is reasonable to infer that Defendant intended to arouse or gratify himself or M. sexually, regardless of whether it might also be reasonable to infer that Defendant merely touched her in helping her pull up her pants.

¶ 19 Looking at all of the evidence, the question we must answer is when "[v]iewing the evidence, and all reasonable inferences therefrom, in a light most favorable to the State," is there a reasonable belief that Defendant touched M.'s anal or genital area with the intent to either cause physical harm or sexual gratification? *Clark*, 2001 UT 9 at ¶ 20, 20 P.3d 300. Phrased differently, do the inconsistencies render the evidence "wholly lacking and incapable of reasonable inference" to prove that Defendant committed the alleged offense? *State v. Talbot*, 972 P.2d 435, 438 (Utah 1998).

¶ 20 The standard for bindover, developed in our common law, has left little discretion for the magistrate. Given this strict standard and under our de novo review, we conclude that Defendant should be bound over for trial.[5] We conclude there is sufficient evidence, although perhaps barely, to support a reasonable belief that Defendant touched M. with the requisite intent, and thus, we reverse the magistrate's dismissal of the information.

---

5. While our supreme court has held that "[t]he magistrate's role in this process . . . is not that of a rubber stamp for the prosecution," *State v. Clark*, 2001 UT 9, ¶ 10, 20 P.3d 300, the very limited discretion afforded a magistrate under existing case law suggests otherwise. The magistrate's role at the preliminary hearing is to "ferret[ ] out . . . groundless and improvident prosecutions." *Id.* at ¶ 16 (second alteration in original) (quotations and citations omitted). However, because the State's burden at a preliminary hearing is the same as that for an arrest warrant, i.e., "reasonable belief," *id.*, the discretion afforded the magistrate is very narrow. The direction to the magistrate that the defendant should be bound over "[u]nless the evidence is wholly lacking and incapable of reasonable infer-

ence" that the defendant committed the offense, *State v. Schroyer*, 2002 UT 26, ¶ 10, 44 P.3d 730 (quotations and citations omitted), seems close to a "rubber stamp for the prosecution." *Clark*, 2001 UT 9 at ¶ 10, 20 P.3d 300. Furthermore, the gatekeeper has little power to ferret out improper prosecutions. We encourage the Utah Supreme Court to revisit the narrow discretion afforded magistrates in determining whether to bind a defendant over for trial. *See also State v. Robinson*, 2003 UT App 1, ¶ 21, 63 P.3d 105 (Davis, J., concurring) (requesting that the Utah Supreme Court revisit the "so-called presumption 'that the prosecution's case will only get stronger as the investigation continues' " as part of the rationale for a lowered probable cause standard for bindover (citation omitted)).

CONCLUSION

¶ 21 We reverse the magistrate's dismissal of the information and remand with instructions to bind Defendant over for trial because the evidence establishes probable cause that Defendant touched M. with the requisite intent.

¶ 22 WE CONCUR: PAMELA T. GREENWOOD and GREGORY K. ORME, Judges.