2006 UT App 237

**STATE of Utah, Plaintiff and Appellant,**

v.

**Robert INGRAM, Defendant and Appellee.**

**No. 20050294–CA.**

Court of Appeals of Utah.

June 15, 2006.

Mark L. Shurtleff, Attorney General, and Jeanne B. Inouye, Assistant Attorney General, Salt Lake City, for Appellant.

J. Bruce Savage, Park City, for Appellee.

Before Judges BENCH, McHUGH, and THORNE.

## OPINION

BENCH, Presiding Judge:

¶ 1 The State of Utah appeals the trial court's order refusing to bind over Defendant Robert Ingram for trial on the second of two counts of aggravated sexual abuse of a child, first degree felonies. *See* Utah Code Ann. § 76–5–404.1 (2003). We reverse and remand.

## BACKGROUND

¶ 2 Ingram was a neighbor of K.R., a six-year-old girl, and S.G., a seven-year-old girl. Ingram lived alone, and his own children occasionally visited him. K.R. and S.G. would visit Ingram and his children at his home.

¶ 3 On one occasion, K.R. and another child got muddy while playing outside. Because the shower drain at K.R.'s home was clogged, K.R.'s mother took both children next door to Ingram's home and asked if they could use his shower, which Ingram permitted. The two girls showered together. K.R.'s mother realized that she had forgotten to bring a clean pair of underwear for K.R. and went back to her home to retrieve them. K.R.'s mother returned after just a minute or two.

¶ 4 While she was gone, Ingram went into the bathroom to help the girls because the water in his shower had become cold. When Ingram entered the bathroom, he soaped up his hands and put soap on K.R. He then proceeded to rub or "wash" K.R.'s vagina. Afterward, K.R. told her mother what had occurred in the shower, albeit reluctantly because K.R. did not want Ingram to go to jail.

¶ 5 Later, some of the neighborhood children asked S.G. if Ingram had touched her as well. S.G. indicated affirmatively. On one visit, Ingram began playing a computer game and invited S.G. to sit on his lap. While on his lap, Ingram rubbed S.G.'s vagina over her clothing until someone knocked on the door. Ingram also showed S.G. a photograph on his computer, which Ingram had taken of teenagers who appear to be engaged in oral sex. S.G.'s mother reported the matter to the police, who interviewed both S.G. and her mother. Based on the police interviews, the police believed that K.R. may also have been a victim and interviewed her. The police later interviewed Ingram.

¶ 6 During his interview regarding K.R., Ingram indicated that the water in his bathroom had become cold and that he had brought in warm water to rinse off the girls. Ingram conceded that he washed, rinsed, and dried K.R. When asked about touching K.R.'s vagina, Ingram indicated that K.R. did not know how to wash her vagina, but that it needed to be washed. Ingram conceded that he had washed K.R.'s vagina, but asserted that the washing was not sexual. Ingram initially stated that he washed K.R. with a washcloth. Then, when confronted with K.R.'s statement that he had used his bare hand, Ingram conceded that he used his bare hand because soap had gotten into K.R.'s vagina and that he had to rinse it out.

¶ 7 The police also asked Ingram about his contact with S.G. Ingram conceded that while S.G. was on his lap, his hand momentarily slipped down onto her vagina, outside her clothing. Once he realized that his hand was there and that he was rubbing her, Ingram said he continued to rub her because he did not want to startle her by abruptly stopping. Ingram indicated that it appeared to him that S.G. was enjoying it so he put her down and told her that they should stop because it was wrong.

¶ 8 Further, Ingram told police that he was "hyper aware" of the vaginal area because of his criminal history. Ingram had been previously charged with rape of a child and entered a guilty plea of unlawful sexual activity with a minor, a third degree felony. *See* Utah Code Ann. § 76–5–401 (2003). The police also asked Ingram about the photograph he had shown S.G. of teenagers performing oral sex. Ingram acknowledged the existence of the photo but indicated that it was a gag and only gave the appearance of oral sex being performed.

¶ 9 Based on the interviews, Ingram was charged with two counts of aggravated sexu-

al abuse of a child, one count for the incident with S.G. and the other for the incident with K.R. Following a preliminary hearing, the trial court, acting as a magistrate, bound over Ingram on the first count, which involved his conduct toward S.G. However, the trial court refused to bind over Ingram on the second count, which involved his conduct toward K.R., finding that "there [wa]s no evidence ... that [Ingram] acted with the intent ... to arouse or gratify a sexual desire." Instead, on that count, the trial court bound over Ingram on a lessor charge of lewdness involving a child, a class A misdemeanor. *See* Utah Code Ann. § 76–9–702.5 (2003).

¶ 10 The trial court subsequently granted the State's motion to sever the proceedings on the two counts. Concerning the first count, the matter proceeded to trial and in August 2005, a jury found Ingram guilty of aggravated sexual abuse of S.G. The State petitioned for interlocutory review of the trial court's refusal to bind over Ingram on the second count, and we granted the State's petition.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 11 The State argues that the trial court erred in failing to bind over Ingram on the count of aggravated sexual abuse of K.R. This matter presents a mixed question of law and fact "because a decision to bind a defendant over for trial includes the application of the appropriate bindover standard to the facts presented in [this] case." *State v. Virgin*, 2006 UT 29, ¶ 27. Accordingly, "in reviewing a ... bindover decision, [we] should afford the [lower court's] decision limited deference." *Id.* at ¶ 26.

## ANALYSIS

■ ¶ 12 "To bind a defendant over for trial, the State must show probable cause at a preliminary hearing by presenting sufficient evidence to establish that the crime charged has been committed and that the defendant has committed it." *State v. Clark*, 2001 UT 9, ¶ 10, 20 P.3d 300 (alteration, quotations, and citations omitted); *see also Virgin*, 2006 UT 29 at ¶ 17, 137 P.3d 787 (reaffirming the conclusion in *Clark* that

the appropriate bindover standard is probable cause). "[A]t the preliminary hearing stage, the magistrate should apply the same probable cause standard as that applied at the arrest warrant stage.... Under this standard, the prosecution must present sufficient evidence to support a *reasonable belief* that an offense has been committed and that the defendant committed it." *State v. Hawatmeh*, 2001 UT 51, ¶ 15, 26 P.3d 223 (footnote, quotations, and citation omitted); *see also Virgin*, 2006 UT 29 at ¶ 18, 137 P.3d 787. "[T]he magistrate must view all evidence in the light most favorable to the prosecution and must draw all reasonable inferences in favor of the prosecution." *Clark*, 2001 UT 9 at ¶ 10, 20 P.3d 300 (quotations and citations omitted); *see also Virgin*, 2006 UT 29 at ¶ 24, 137 P.3d 787.

■ ¶ 13 "[T]he probable cause standard does not constitute a rubber stamp for the prosecution but, rather, provides a meaningful opportunity for magistrates to ferret out groundless and improvident prosecutions." *Virgin*, 2006 UT 29 at ¶ 19, 137 P.3d 787. "[T]he evidence required [to show probable cause] ... is relatively low because the assumption is that the prosecution's case will only get stronger as the investigation continues." *Clark*, 2001 UT 9 at ¶ 10, 20 P.3d 300 (omission and second alteration in original) (quotations and citations omitted). "Accordingly, [w]hen faced with conflicting evidence, the magistrate may not sift or weigh the evidence ... but must leave those tasks to the fact finder at trial." *Id.* (alteration and omission in original) (quotations and citations omitted). "[T]he [probable cause] standard nevertheless gives magistrates discretion to discontinue groundless prosecutions." *Virgin*, 2006 UT 29 at ¶ 21, 137 P.3d 787. "Under current law, magistrates may decline bindover if the prosecution fails to present sufficiently credible evidence on at least one element of the crime." *Id.*

■ ¶ 14 "The key word that elevates magistrates' role beyond that of a mere rubber stamp for the prosecution is 'reasonable.' Indeed, the prosecution has not carried its burden if it merely shows belief rather than *reasonable* belief." *Id.* at ¶ 22. "Inclusion of

the word 'reasonable' in this standard suggests that, at some level of inconsistency or incredibility, evidence becomes incapable of satisfying the probable cause standard. When that is the case, magistrates are empowered to deny bindover." *Id.* In sum, "[t]he defendant *should* be bound over for trial '*[u]nless* the evidence is wholly lacking and incapable of *reasonable* inference [or belief] to prove some issue [or element of the crime.]'" *State v. Schroyer*, 2002 UT 26,- ¶ 10, 44 P.3d 730 (emphasis added) (second alteration in original) (citation omitted); *see also Virgin*, 2006 UT 29 at ¶¶ 17–25, 137 P.3d 787.

¶ 15 In Utah, "[a] person commits sexual abuse of a child if, [the person] touches the ... genitalia of any child ... with the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant." Utah Code Ann. § 76–5–404.1(2). The offense constitutes aggravated sexual abuse of a child where "the accused, prior to sentencing for this offense, was previously convicted of any felony, or of a misdemeanor involving a sexual offense" or "the accused caused the penetration, however slight, of the genital or anal opening of the child by any part or parts of the human body other than the genitals or mouth." *Id.* § 76–5–404.1(4)(e), (j).

■ ¶ 16 As for the count involving K.R., the trial court found probable cause to believe that Ingram committed all the elements of aggravated sexual abuse of a child except that "there [was] no evidence ... that the [D]efendant acted with the intent to gratify a sexual desire[or] to arouse or gratify a sexual desire, and[ ] therefore, decline[d] to bind over as to count two." Instead, the trial court bound Ingram over on the lessor charge of lewdness involving a child. *See id.* § 76–9–702.5.

■ ¶ 17 To show probable cause for intent, the State must only prove that its theory of intent is reasonable. *See State v. Virgin*, 2006 UT 29, ¶¶ 17–18; *Schroyer*, 2002 UT 26 at ¶ 12, 44 P.3d 730; *State v. Hawatmeh*, 2001 UT 51, ¶ 15, 26 P.3d 223. "Knowledge or intent is a state of mind generally to be inferred from the person's conduct viewed in light of all the accompanying circumstances."

*State v. Kihlstrom*, 1999 UT App 289, ¶ 10, 988 P.2d 949. "[S]o long as there is some evidence, including reasonable inferences, from which findings of all the requisite elements of the crime can reasonably be made, our inquiry stops." *State v. Hall*, 946 P.2d 712, 724 (Utah Ct.App.1997) (quotations and citations omitted).

¶ 18 In *Virgin*, a four-year-old child testified during a police interview that Virgin "pulled her underwear down, and put his finger in her bottom [and] showed her a picture of a penis." *State v. Virgin*, 2004 UT App 251, ¶ 3, 96 P.3d 379, *rev'd*, 2006 UT 29. The magistrate declined to bind Virgin over for trial and stated that "[t]he only evidence in support of the alleged touching came from the child herself" and that "[t]here was a multitude of inconsistencies between [the child's] statements and the statements and testimony of third-party witnesses." As a result, the magistrate concluded that "the evidence lack[ed] sufficient credibility and reliability to form a reasonable belief that the alleged offense occurred and thus is wholly lacking and incapable of any reasonable inference that would support a [bindover]." The State appealed, and this court concluded that the evidence was sufficient to establish probable cause that Virgin committed the crime and remanded with instructions that he be bound over for trial. *See id.* at ¶ 21. On certiorari, the Utah Supreme Court reversed, holding that the magistrate did not "exceed his discretion in refusing to bind Virgin over for trial." *Virgin*, 2006 UT 29 at ¶ 36, 137 P.3d 787.

■ ¶ 19 The magistrate is afforded the "ability to make credibility determinations [and] may disregard or discount as incredible evidence that is *not capable* of supporting a reasonable belief as to an element of the prosecutor's claim." *Id.* at ¶ 25 (emphasis added). The supreme court therefore held that it is within the magistrate's discretion to discount the child's inconsistent statements in determining whether there is probable cause to bind over for trial. *See id.*

¶ 20 Viewed in the light most favorable to the prosecution, the evidence in our case reasonably supports the State's theory that

Ingram touched K.R. with an intent to arouse or gratify sexual desires. Several facts support the State's theory. Ingram was not K.R.'s parent and the evidence did not suggest an immediate need for Ingram's assistance to wash K.R. Ingram had not been asked to wash K.R.; nor had he been given permission to wash K.R. by her parents. Rather, Ingram waited until K.R.'s mother left, and while she was momentarily away, he took it upon himself to "wash" K.R.'s vagina.

¶ 21 Furthermore, Ingram's history of sexual abuse of children makes his bindover even more compelling and sufficiently establishes a reasonable belief that Ingram had the necessary intent to commit the crime. *See, e.g., State v. Widdison,* 2001 UT 60, ¶ 43, 28 P.3d 1278 (holding that evidence of prior acts of child abuse committed by the defendant against children other than the victim are admissible to show intent); *State v. Rees,* 2004 UT App 51, ¶ 3, 88 P.3d 359 (mem.) (holding that defendant's prior sexual wrongs were admissible at trial to show defendant's "intent to gratify his sexual desires" (other quotations omitted)); *State v. Bradley,* 2002 UT App 348, ¶¶ 20–21, 57 P.3d 1139 (holding that evidence of sexual abuse of defendant's natural son was admissible on the charge of aggravated sexual abuse of his stepchildren to show " 'intent to arouse or gratify the sexual desire of any person' " (quoting Utah Code Ann. § 76–5–404.1)); *State v. Teuscher,* 883 P.2d 922, 928 (Utah Ct.App.1994) (holding that "evidence of acts of child abuse committed by defendant against children other than the victim in the present case" are admissible to show intent). The incident involving S.G., as well as Ingram's past conviction of unlawful sexual activity with a minor, support the State's reasonable belief that Ingram had the necessary sexual intent. *See* Utah Code Ann. § 76–5–404.1(2). As a result, the trial court exceeded its discretion in declining to bind over Ingram on count two.

## CONCLUSION

¶ 22 The evidence reasonably supports the State's theory that Ingram touched K.R. with an intent to arouse or gratify sexual desires for purposes of a bindover. The trial court therefore abused its discretion in refusing to

bind over Ingram on the count of aggravated sexual abuse of K.R. *See* Utah Code Ann. § 76–5–404.1. We therefore reverse and remand for proceedings consistent with this opinion.

¶ 23 I CONCUR: CAROLYN B. McHUGH, Judge.

THORNE, Judge (concurring):

¶ 24 I agree with the majority's determination that the trial court abused its discretion in refusing to bind Ingram over for trial on count two, aggravated sexual abuse of K.R. However, I write separately to note that under the facts in this case, it is not necessary to look at the incident involving S.G. or Ingram's past conviction of unlawful sexual activity with a minor to reasonably believe that Ingram touched K.R. with the requisite intent. The circumstances of Ingram's contact with K.R., standing alone, are more than sufficient to reasonably infer that Ingram touched K.R. with an intent to arouse or gratify the sexual desires of any person.

¶ 25 In this case, Ingram, K.R.'s neighbor, conceded that he decided to wash K.R.'s vagina and used his bare hand to remove the soap he had gotten inside her vagina. Ingram had no reason or permission to wash K.R.'s vagina; K.R.'s mother had not requested his assistance and K.R. had no compelling need to have her vagina washed. Rather, Ingram acted to selectively wash only K.R.'s vagina, not her hair, back, legs, etc. during the moments K.R.'s mother was temporarily away, despite the fact that K.R.'s mother would have been able to wash K.R. upon her imminent return. These circumstances alone reasonably support an inference that Ingram acted not with some innocent purpose, but with the intent to sexually gratify himself.

¶ 26 Additionally, I write to suggest that the Utah Supreme Court revisit the presumption relied on, in part, by the majority in this case and several other Utah cases to justify the lowered probable cause standard for the bindover of criminal defendants: "that the prosecution's case will only get stronger as the investigation continues." *Evans v. State,* 963 P.2d 177, 182 (Utah 1998).

This presumption has an inadequate legal and factual basis and should not be so readily accepted by our courts.

¶ 27 The presumption, incorporated by Utah case law, appears to be an altered version of a presumption that originated in *McAllister v. State*, 97 Okla.Crim. 167, 260 P.2d 454, 465 (1953), wherein the Oklahoma appellate court stated that "[t]he presumption is that the State would strengthen its evidence at trial by the production of everything favorable to support the charge." *Id.*; *see also State v. Pledger*, 896 P.2d 1226, 1229 (Utah 1995); *State v. Robinson*, 2003 UT App 1,¶ 14, 63 P.3d 105 (Davis, J., concurring). As Judge Davis correctly noted and thoroughly discussed in his concurring opinion in *State v. Robinson*, the Oklahoma cases relied on by Utah do not cite any legal or factual basis to support this presumption. *See Robinson*, 2003 UT App 1 at ¶ 14, 63 P.3d 105.

¶ 28 The presumption "that the prosecution's case will only get stronger as the investigation continues" is factually suspect. There is no factual basis of which I am aware to conclude that police investigations regularly continue beyond the preliminary hearing stage of the case, resulting in additional evidence being obtained. *See id.* at ¶ 19 (stating that " '[a]s a practical matter, in most cases police investigation ceases once the complaint has been issued' " (Davis, J., concurring) (alteration in original) (quoting Kenneth Graham & Leon Letwin, *The Preliminary Hearings in Los Angeles: Some Field Findings and Legal–Policy Observations*, 18 UCLA L.Rev. 635, 692 (1971))).

¶ 29 There is, in my opinion, inadequate support for the proposition that the prosecution's case will get stronger because of any continued investigation. I believe it is unwise to bind over a defendant on a lowered probable cause standard on the expectation that more evidence will be obtained when the investigation has generally ceased and no further work is being done to strengthen the case. Rather, the evidence should be reviewed at the preliminary hearing as it is presented by the prosecutor absent any reli-

ance on the notion that the case will get stronger as the investigation continues.[1] Thus, the evidence presented at the preliminary hearing should on its own support a reasonable belief that the defendant committed the charged crime. To review the evidence with the presumption that the case will get stronger as the investigation continues may effectively interfere with the magistrate's role in ferreting out groundless prosecutions before they go to trial. This is especially true because "the probable cause standard already favors the prosecution." *State v. Virgin*, 2006 UT 29,¶ 33 (citing *State v. Talbot*, 972 P.2d 435, 437–38 (Utah 1998) (explaining that a magistrate must resolve all inferences in favor of the prosecution)). Therefore, the presumption that the prosecution's case will only get stronger should not be relied on.

¶ 30 Because the presumption "that the prosecution's case will only get stronger as the investigation continues" is not based on any known or proven facts or legal basis, I believe that our supreme court should revisit it. In any event, I concur with the majority opinion, which correctly concludes that the trial court abused its discretion in finding that no evidence of intent to arouse or gratify a sexual desire existed and in refusing to bind Ingram over for trial on count two, aggravated sexual abuse of K.R.

---

1. This should not prevent the prosecutor from presenting evidence that the investigation in the case is actually continuing and likely to produce additional evidence. Nor should it prevent the magistrate from considering such evidence at the preliminary hearing.