2010 UT App 275

STATE of Utah, Plaintiff and Appellee,

v.

Michael DROESBEKE, Defendant
and Appellant.

No. 20090005–CA.

Court of Appeals of Utah.

Oct. 7, 2010.

Lori J. Seppi and Andrea J. Garland, Salt
Lake City, for Appellant.

Mark L. Shurtleff and Jeffrey S. Gray,
Salt Lake City, for Appellee.

Before Judges DAVIS, ORME, and
THORNE.

## OPINION

THORNE, Judge:

¶ 1 Defendant Michael Droesbeke was
charged with one count each of sodomy upon
a child, a first degree felony, *see* Utah Code
Ann. § 76–5–403.1 (2008); aggravated sexual

abuse of a child, a first degree felony, *see id.* § 76–5–404.1; and dealing in material harmful to a minor, a third degree felony, *see id.* § 76–10–1206 (Supp.2010). Having obtained permission, Defendant appeals the district court's interlocutory order denying his motion to quash the bindover on those charges. We affirm.

## BACKGROUND

¶ 2 Defendant lived with his girlfriend and her daughter, S.H. In 2008, eight-year-old S.H. had a sleepover at the home of her mother's cousin. During the sleepover, S.H. disclosed to her second cousin and her second cousin's step-sister, D.W., that Defendant had abused her. Thereafter, the girls were interviewed at the Children's Justice Center (the CJC). Defendant was charged with one count each of sodomy upon a child, aggravated sexual abuse of a child, and dealing in material harmful to a minor.

### I. The CJC Interview of S.H.

¶ 3 During her CJC interview, S.H. was hesitant to speak about the abuse. The officer asked S.H. to tell him about what she told D.W. at the sleepover. After reassurances by the officer, S.H. agreed to speak with him and related that she "told [D.W.] what my dad did to me a long time ago." The officer then asked S.H. to tell him one of the things that her dad did. S.H. responded "s-e-x." When the officer asked how Defendant did that, S.H. said he was teaching her "so [she] would never do it." The officer asked S.H. what Defendant showed her or did to teach her about sex. S.H. responded that she did not know.

¶ 4 The officer continued to interview S.H. and asked her whether she and Defendant had ever watched any movies. S.H. responded that they watched one movie together. She explained that, in the movie, there were two boys and one girl who "had no clothes." She further relayed that the people in the movie had sex and some of it was gross. The officer asked her to tell him about other things Defendant taught her. S.H. said that while she and her brother were watching a movie in the living room, Defendant asked her to follow him into the bathroom, where

he put "this green plastic thing … on his private part." S.H. then demonstrated how Defendant moved his hand up and down and said that he went "like this, and white stuff came out." She said that Defendant told her it was sperm and that he threw it away in the garbage. The officer asked S.H. what else happened. S.H. also said that before the sperm came out, her dad told her to kiss his private part. S.H. told Defendant no, but "he just made me do it."

### II. The Preliminary Hearing

¶ 5 A preliminary hearing was held. The State admitted a recording of S.H.'s and D.W.'s CJC interviews. S.H. testified at the hearing. On direct examination, S.H. demonstrated that she knew the difference between telling the truth and telling a lie and agreed to tell the truth. Thereafter, S.H. testified that she remembered speaking to D.W., the officer, and the prosecutor about what happened to her but could not remember the details of her conversations. The prosecutor asked S.H. about her feelings for Defendant. S.H. agreed that she loved him. When asked if she had been told where she was going to live if Defendant stayed in jail, S.H. said, "I don't know if I've been told." S.H. agreed that she was worried about where she would live. S.H. further agreed that "all those things" made "it hard to talk about what happened."

¶ 6 The prosecutor asked S.H. whether she had "ever seen [Defendant's] penis." S.H. responded "[o]nce," but that she did not "remember that much." The prosecutor asked, "Do you remember telling someone that he put something on his penis?" S.H. acknowledged that she did. When asked to explain what it looked like, S.H. testified that "[i]t was plastic and it was green." After several more questions, S.H. agreed that she saw Defendant move his hand up and down and that she remembered telling the officer that she saw Defendant's sperm. When asked whether Defendant asked her to kiss his penis, S.H. said, "Yes, but … I can't explain it." She denied that Defendant had her kiss his penis. The prosecutor asked S.H. how Defendant taught her about sex. She testified that he taught her "[n]ot to do it" and

when questioned further explained that he taught her not to do it by showing her movies. When asked what she saw in these movies, she testified, "People doing it," having "s-e-x."

¶ 7 On cross-examination, defense counsel asked S.H. if she could describe Defendant's penis. S.H. said no and that she did not remember anything about it. S.H. further testified that she did not see him touch his penis and he did not ask her to touch it either. S.H. also testified that she had told her mother that the abuse happened even though it did not happen. Defense counsel asked S.H., "what you're saying right now is that what you told earlier was a mistake?" S.H. replied, "yes," and testified that she told her mother that she had not really seen Defendant's penis and that she had not really seen the movies. S.H. further testified that she was telling her mother the truth when she said that she had lied about the allegations. Next, S.H. agreed that there were movies of people having sex, that Defendant had never touched her private parts, Defendant never asked her to kiss his penis, and she had never kissed his penis. S.H. remembered telling the officer that she had kissed Defendant's penis but that it did not happen, she "thought [she] did but it didn't happen."

¶ 8 After the presentation of evidence, the magistrate took the matter under advisement and allowed the parties to brief the issue of bindover. Following briefing, the preliminary hearing was reconvened and the magistrate heard oral arguments.

### III. The Bindover Determination

¶ 9 In her ruling, the magistrate first acknowledged the inconsistency of S.H.'s testimony. The magistrate found that S.H.'s inconsistency was not surprising given Defendant's behavior at the preliminary hearing and its impact on S.H. The magistrate stated:

> There's ... no question the [D]efendant who's pretty in control of himself today and looking, staring at the court was less in control of himself when this little girl walked in and testified and was crying and emotionally distraught, and then she was looking at him, and obviously impacted by

the ... nonverbal communication that occurred....

> ....

> Now, again, obviously there are problems with the inconsistencies but viewing [them] in a light favorable and taking it altogether, you know, changing in response to questions asked at the time of the preliminary hearing didn't—didn't make me disbelieve that what she had said at times had happened to her, actually happened to her. I think she was credible; though she said one thing and then said another. She had said what had happened previously and that it's understandable to me that— how she responded that was different.

¶ 10 The magistrate found that S.H.'s core allegations were believable and that there was sufficient evidence to believe Defendant committed the crimes charged. The magistrate bound Defendant over for trial in the district court on all charges.

### IV. The Motion to Quash the Bindover

¶ 11 Thereafter, Defendant moved to quash the bindover. The district court held oral arguments and ultimately concluded that the evidence was sufficient for bindover and denied Defendant's motion. The district court entered findings of fact and conclusions of law and found that the preliminary hearing evidence supported a probable cause determination—that is, a reasonable belief that Defendant forced S.H. to kiss his penis, to watch him masturbate, and to watch movies depicting two males and one female having sex.

¶ 12 The district court also concluded that S.H. essentially recanted her original allegations during her testimony at the preliminary hearing. The district court noted:

> 1. Even if S.H. recanted, it is not the responsibility of the court to determine the credibility of witnesses at a preliminary hearing. The jury will have the opportunity to weigh the credibility of all witnesses at trial.

> 2. The evidence provided at the hearing from witnesses and [the CJC] inter-

views is sufficient to support a bindover on all charges.

Defendant now appeals.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 13 Defendant argues that the district court erred in denying his motion to quash the bindover because the court failed to weigh the credibility of S.H.'s testimony, which Defendant asserts was so contradictory, inconsistent, and unbelievable that it could not establish probable cause to believe that Defendant committed the charged crimes. "To support bindover the [s]tate must establish probable cause. In order to establish probable cause, the [state] must produce evidence sufficient to support a reasonable belief that the defendant committed the charged crime." *State v. Johnson,* 2008 UT App 5, ¶ 8, 178 P.3d 915 (citation and internal quotation marks omitted).

■ ¶ 14 "This matter presents a mixed question of law and fact 'because a decision to bind a defendant over for trial includes the application of the appropriate bindover standard to the facts presented in [this] case.'" *State v. Ingram,* 2006 UT App 237, ¶ 11, 139 P.3d 286 (alteration in original) (quoting *State v. Virgin,* 2006 UT 29, ¶ 27, 137 P.3d 787). "Accordingly, 'in reviewing a . . . bindover decision, [we] should afford the [lower court's] decision limited deference.'" *Id.* (omission and alterations in original) (quoting *Virgin,* 2006 UT 29, ¶ 26, 137 P.3d 787).

## ANALYSIS

¶ 15 Defendant argues that the district court erred in denying his motion to quash the bindover because S.H.'s preliminary hearing statements are so inconsistent, contradictory, and incredible that her testimony could not establish probable cause to believe that Defendant committed the charged crimes. As part of this argument, Defendant alleges that the district court applied an incorrect probable cause standard by failing to weigh the credibility of S.H.'s preliminary hearing testimony when reviewing the magistrate's bindover decision on a motion to quash. Because Defendant asserts that the district court applied an incorrect standard, we first delineate the probable cause standard to be applied at a preliminary hearing before considering the district court's denial of Defendant's motion to quash.

## I. The Probable Cause Standard

■ ¶ 16 The preliminary hearing "probable cause" standard requires the State to present evidence sufficient to support a reasonable belief that the defendant committed the crime charged. *See State v. Virgin,* 2006 UT 29, ¶ 17, 137 P.3d 787. "Inclusion of the word 'reasonable' in this standard suggests that, at some level of inconsistency or incredibility, evidence becomes incapable of satisfying the probable cause standard. When that is the case, magistrates are empowered to deny bindover." *Id.* ¶ 22.

■ ¶ 17 For this purpose, magistrates may make limited credibility determinations in preliminary hearings. *See id.* ¶ 24. The Utah Supreme Court described the bounds of a magistrate's authority to assess credibility in *State v. Virgin,* 2006 UT 29, 137 P.3d 787. " '[T]he magistrate's evaluation of credibility at a preliminary hearing is limited to determining that evidence is wholly lacking and incapable of reasonable inference to prove some issue which supports the [prosecution's] claim.'" *Id.* ¶ 24 (second alteration in original) (quoting *State v. Talbot,* 972 P.2d 435, 438 (Utah 1998)). The magistrate then has "discretion to discount [a] child's inconsistent statements in determining whether there is probable cause to bind over for trial." *State v. Ingram,* 2006 UT App 237, ¶ 19, 139 P.3d 286.

■ ¶ 18 The limited responsibility to evaluate credibility does not, however, allow a "magistrate to weigh credible but conflicting evidence at a preliminary hearing." *Virgin,* 2006 UT 29, ¶ 24, 137 P.3d 787. "[M]agistrates must leave all the weighing of credible but conflicting evidence to the trier of fact and must 'view the evidence in a light most favorable to the prosecution[,] resolv[ing] all inferences in favor of the prosecution.'" *Id.* (second and third alteration in original) (footnote omitted) (quoting *Talbot,* 972 P.2d at 438).

## II. The District Court's Review of the Magistrate's Bindover Determination

¶ 19 Keeping in mind the probable cause principles previously discussed, we turn to the question of whether the district court applied the correct standard in finding the evidence submitted at the preliminary hearing was sufficient to support a reasonable belief that Defendant committed the charged crimes.

¶ 20 In this case, the magistrate considered the evidence presented at the preliminary hearing and ultimately found that although S.H.'s preliminary hearing testimony was inconsistent, the evidence was not so incredible that it was not capable of supporting a reasonable belief that Defendant committed the charged crimes. The magistrate therefore declined to discount S.H.'s inculpatory statements.[1] The magistrate determined that, based on S.H.'s preliminary hearing testimony and previous CJC interview, the State had presented sufficient evidence to support a probable cause determination—that there is a reasonable belief that Defendant had committed sodomy upon a child, aggravated sexual abuse of a child, and dealing in material harmful to a minor. Accordingly, the magistrate bound Defendant over on the charged crimes.

¶ 21 In reviewing the magistrate's determination, the district court explained that under the probable cause standard the magistrate could appropriately "determine the credibility of the witnesses" in the context of determining whether S.H.'s testimony was "believable enough to find probable cause ... that a crime has been committed and that [Defendant] is the one who committed that crime." The district court further discussed the probable cause standard and pointed out that "it was [not] appropriate for [the magistrate] to consider the credibility of the witness at [the preliminary] hearing in comparison to the other evidence given at the CJC interview." Ultimately the district court found that the evidence presented at the preliminary hearing through admission of S.H.'s CJC interview, despite S.H.'s recantation of aspects of her original allegations during the hearing, was sufficient to support a reasonable belief that Defendant committed the crimes charged.

¶ 22 The district court's review of the magistrate's bindover determination was in accordance with the probable cause standard. In its review, the district court did not, as Defendant suggests, ignore S.H.'s inconsistent preliminary hearing testimony, nor did it fail to make necessary credibility determinations. Instead, the district court observed that the probable cause standard afforded the magistrate the discretion to determine *only* whether S.H.'s preliminary hearing testimony was wholly lacking and incapable of creating a reasonable inference to such a degree that said testimony was incapable of satisfying the probable cause standard and should be discounted. The district court fur-

---

1. The magistrate stated:

   There's ... also no question ... [D]efendant who's pretty in control of himself today and looking, staring at the court was less in control of himself when this little girl walked in and testified and was crying and emotionally distraught, and then she was looking at him, and obviously impacted by the communication, the non-verbal communication that occurred....

   [There was evidence] I think it was [during] redirect ... about [Defendant] coming home and being with them and being able to be in the house if [Defendant was] out of jail and that sort of thing, which did suggest some basis for her inconsistency....

   ....

   ... Based upon [S.H.'s] testimony and the previous [CJC] interview, which was admitted, and I'm just going to start with Count III, I don't think there's any question that the State presented sufficient evidence in the dealing in

   harmful material to a minor,.... I think there was based upon the testimony in court and the examination previously whether—I don't think there's any question that ... a person could have a reasonable belief that that crime was committed and that the Defendant did it.

   I also think about ..., the mouth to the penis, the sodomy on a child.... There was sufficient evidence presented and testimony presented to believe that that crime was committed and that [Defendant] committed it.

   The concern that I had was with respect to the sexual abuse of a child....

   And I believe that having [S.H.] participate and watch [Defendant] masturbating is comparable and intended to be included in [the] statute. I think it's a close call, but I do think there's enough there to find that it [is] reasonable to believe that that occurred and that fits as an aggravated sexual abuse and ... Defendant committed [it.]

ther noted that the magistrate's discretion is therefore limited and the magistrate does not have the authority to weigh credible but conflicting preliminary hearing evidence.

¶ 23 Thereafter, the district court viewed the evidence in a light most favorable to the prosecution, concluded that the CJC interview evidence produced by the State at the preliminary hearing supported a reasonable belief that Defendant committed the charged crimes, explained that it was the responsibility of the jury to weigh S.H.'s credibility, and properly denied Defendant's motion to quash the magistrate's bindover order. Because we conclude that the district court properly reviewed the magistrate's bindover order, we affirm the district court's ruling declining to quash the magistrate's bindover order.

## CONCLUSION

¶ 24 The district court reviewed the magistrate's bindover ruling and determination that S.H.'s testimony was not so inconsistent that it must be discounted. The district court essentially upheld the magistrate's discretionary decision not to completely discount S.H.'s testimony, determined that the magistrate was not allowed to weigh the credibility of witnesses' preliminary hearing testimony, and appropriately left those credibility determinations for the jury.

¶ 25 The district court's review of the magistrate's bindover determination was in accordance with the probable cause standard enunciated in *State v. Virgin*, 2006 UT 29, 137 P.3d 787, which directs that a magistrate may "disregard or discredit evidence that is wholly lacking and incapable of creating a reasonable inference regarding a portion of the prosecution's claim," *id.* ¶ 24 (internal quotation marks omitted), but "must leave all the weighing of credible but conflicting evidence to the trier of fact," *id.* Accordingly, we affirm the district court's ruling declining to quash the magistrate's bindover order.

¶ 26 WE CONCUR: JAMES Z. DAVIS, Presiding Judge, and GREGORY K. ORME, Judge.