IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | OPINION |
| | ) | |
| Plaintiff and Appellant, | ) | Case No. 20100348-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (April 19, 2012) |
| Wade Garrett Maughan, | ) | |
| | ) | 2012 UT App 121 |
| Defendant and Appellee. | ) | |

-----

First District, Brigham City Department, 091100106
The Honorable Kevin K. Allen

Attorneys:     Mark L. Shurtleff and Christopher D. Ballard, Salt Lake City, for
            Appellant
            Richard P. Mauro, Salt Lake City, for Appellee

-----

Before Judges McHugh, Davis, and Roth.

ROTH, Judge:

¶1     The State of Utah appeals the magistrate's decision declining to bind over
Defendant Wade Garrett Maughan for trial on an obstruction of justice offense.  In
particular, the State challenges the magistrate's conclusion that the evidence was
insufficient to establish that Maughan acted with the specific intent to hinder the
prosecution of Glenn Griffin for capital murder.  We affirm.

BACKGROUND

¶2     Brad Perry was murdered in May 1984.  Over two decades later, DNA taken
from the crime scene was matched to a man named Glenn Griffin.  Griffin was charged
with capital murder in 2005.  In conducting further investigation, the police interviewed
several people who had been friends with Griffin at the time of the murder, including
Maughan.  In November 2005, during an interview with the police, Maughan made
statements that put him at the scene and implicated him in the murder.  The State then
charged Maughan with capital murder as well, seeking life without the possibility of
parole.

¶3     Griffin was tried first, and the State sought to use Maughan as a witness against
him.  The State anticipated that Maughan would refuse to testify at Griffin's trial by
invoking his constitutional privilege against self-incrimination, and so, in June 2006, the
State granted Maughan use immunity in order to compel his testimony.  *See generally*
Utah Code Ann. § 77-22b-1 (2008) (providing that a witness who is likely to refuse to
testify based on a privilege against self-incrimination may be required to testify after
being granted use immunity, and that testimony, with some exceptions, may not be
used against him).  The written grant of immunity informed Maughan that "testimony,
evidence, or other information compelled by the State may not be used against [him] in
any criminal or quasi-criminal case, nor any information directly or indirectly derived
from [his] testimony, evidence, or information, unless the testimony, evidence, or
information is volunteered by [him] or is otherwise not responsive to a question."
*Accord id.* § 77-22b-1(2).  The written grant of immunity also informed Maughan that he
"may not refuse to testify or provide evidence or information based upon any right
against compelled self-incrimination," under penalty of contempt sanctions or
obstruction of justice charges.  *Accord id.* § 77-22b-1(1)(b); *id.* § 77-22b-2.

¶4     Maughan filed several motions objecting to the use immunity grant, arguing that
there was an "obvious conflict in compelling one facing loss of life or liberty to testify
and provide evidence in the very case where that person is [a co]defendant."  Maughan
expressed distrust of the scope of the protection afforded by the use immunity grant,
asserting that its "protections are not co-extensive with" his right to be free from self-
incrimination; he also raised issues concerning the reliability of the statements he had
made to the police in November 2005, asserting that the statements were coerced and

untrustworthy.[1] Generally, Maughan expressed "fear[] that his constitutional rights needed to be protected." The district court rejected Maughan's arguments and issued multiple orders requiring that he submit to police interviews and testify at Griffin's trial. The court's orders further warned Maughan that "[a]ny refusal to answer or cooperate may be punished as a contempt of this [c]ourt, may result in prosecution for obstruction of justice by the [S]tate, or both." Despite these warnings, Maughan refused to answer any questions during two separate police interviews in February and September of 2007.

¶5     In October 2008, the State called Maughan as a witness at Griffin's trial. When he took the stand, Maughan declined to answer any questions and instead responded to all of the State's inquiries simply by stating, "I choose not to answer any questions." Maughan provided no explanation for his refusal to testify, but Maughan's counsel was present and explained that, although Maughan "ha[d] been advised of the use immunity agreement in this case," he nonetheless "reassert[ed] his rights under the Fifth Amendment" not to incriminate himself by testifying in a trial in which he "is a codefendant" also "charged with . . . capital murder." Even without Maughan's testimony, Griffin was convicted of capital murder and is currently serving a life sentence without the possibility of parole. Maughan himself was later tried and acquitted of capital murder in June 2010.

¶6     In April 2009, however, the State charged Maughan with obstruction of justice for refusing to cooperate in police interviews and refusing to testify at Griffin's trial.[2] To commit obstruction of justice, Maughan must have acted with the specific intent to "hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment" of Griffin. *See* Utah Code Ann. § 76-8-306(1) (Supp. 2011). At the

---

[1]A significant focus of Maughan's defense against the capital murder charge involved discrediting his statements to the police by "arguing that [his] alleged confession was based on coercive police interrogation techniques and was false, untrustworthy, and unreliable."

[2]Maughan was originally charged with three counts of obstruction of justice but the magistrate determined that, for the conduct at issue, the State could only charge him with a single count. The State does not challenge this aspect of the court's decision and, thus, for ease of explanation, we treat the matter as if Maughan were charged with a single count of obstruction of justice.

preliminary hearing, Maughan moved to dismiss the obstruction of justice charge, arguing that the State had presented insufficient evidence to prove that, in refusing to testify and submit to police interviews, he had acted with the specific intent to hinder Griffin's prosecution.

¶7     The magistrate concluded that although the State had provided evidence of the other elements of obstruction of justice, "[t]here [we]re no facts in evidence to suggest that [Maughan] had any intent to hinder, delay, or prevent . . . Griffin's prosecution or trial."  In reaching this conclusion, the magistrate considered the evidence presented at the preliminary hearing and observed that the State "merely presented evidence that [Maughan] refused to provide or concealed non-privileged information" and "appear[ed] to expect the [c]ourt to infer from the refusals to answer questions at the interview and trial, that such [conduct] demonstrate[d] the required element of intent." The magistrate, however, reasoned that "[n]one of the facts suggest that [Maughan] had any reason to prevent . . . Griffin's conviction."  Rather, the magistrate noted that "[t]he facts suggest that [Maughan] provided assistance in the investigation and prosecution of . . . Griffin until [Maughan] himself was charged with the same murder," and only "[a]fter being charged [with capital murder did Maughan] . . . refuse[] to further assist in the investigation and prosecution of . . . Griffin in order to protect his [own] . . . rights."  The magistrate thus determined that "[a]ll the facts in evidence support the inference that, notwithstanding the use immunity, [Maughan] still feared that his constitutional rights needed to be protected."  The magistrate reasoned that "[t]his is not a case in which the facts give rise to two alternate inferences" but rather "the facts demonstrate that the only reasonable inference to be drawn from the evidence presented is that [Maughan] refused to provide or concealed non-privileged information to protect his interests against the prosecution of himself for murder." Having concluded that "the State . . . failed to present any evidence that [Maughan] intended . . . to hinder, delay, or prevent the investigation, prosecution or conviction of . . . Griffin," the magistrate refused to bind Maughan over for trial and dismissed the obstruction of justice offense.

ISSUE AND STANDARD OF REVIEW

¶8     The State challenges the magistrate's decision at the preliminary hearing that it had presented insufficient evidence to bind Maughan over for trial.  "'This matter presents a mixed question of law and fact because a decision to bind a defendant over for trial includes the application of the appropriate bindover standard to the facts

presented in [this] case.'" *State v. Droesbeke*, 2010 UT App 275, ¶ 14, 241 P.3d 772 (alteration in original) (quoting *State v. Ingram*, 2006 UT App 237, ¶ 11, 139 P.3d 286). "Accordingly, 'in reviewing a . . . bindover decision, [we] should afford the [lower court's] decision limited deference.'" *Ingram*, 2006 UT App 237, ¶ 11 (omission and alterations in original) (quoting *State v. Virgin*, 2006 UT 29, ¶ 26, 137 P.3d 787).

ANALYSIS

¶9     "To bind a defendant over for trial, the State must show probable cause at a preliminary hearing by present[ing] sufficient evidence to establish that the crime charged has been committed and that the defendant committed it." *State v. Clark*, 2001 UT 9, ¶ 10, 20 P.3d 300 (alteration in original) (internal quotation marks omitted). This requires the State to "present sufficient evidence to support a reasonable belief that an offense has been committed and that the defendant committed it." *Id.* ¶ 16; *see also Virgin*, 2006 UT 29, ¶ 17. This includes producing "believable evidence of all the elements of the crime charged." *Virgin*, 2006 UT 29, ¶ 20 (internal quotation marks omitted). At this early stage of the proceedings "'the evidence required [to show probable cause] . . . is relatively low.'" *Clark*, 2001 UT 9, ¶ 10 (alteration in original) (quoting *Evans v. State*, 963 P.2d 177, 182 (Utah 1998)).

¶10    "[W]hen faced with conflicting evidence, the magistrate may not sift or weigh the evidence . . . but must leave those tasks to the fact finder at trial." *Clark*, 2001 UT 9, ¶ 10 (internal quotation marks omitted). "'[T]he magistrate must view all evidence in the light most favorable to the prosecution and must draw all reasonable inferences in favor of the prosecution.'" *Id.* (quoting *State v. Hester*, 2000 UT App 159, ¶ 7, 3 P.3d 725). In circumstances where alternative but equally reasonable inferences may be drawn from the evidence in favor of either the defendant or the State, the magistrate must rely on those reasonable inferences that are favorable to the State. *See id.* ¶¶ 10, 20 (reasoning that "the facts [presented] g[a]ve rise to two alternate inferences" and, accordingly, "the evidence, and all reasonable inferences therefrom, [must be construed] in a light most favorable to the State").

¶11    Nevertheless, "'[t]he magistrate's role in this process, while limited, is not that of a rubber stamp for the prosecution.'" *Id.* ¶ 10 (alteration in original) (internal quotation marks omitted). Indeed, "the primary purpose of the preliminary hearing[ is] ferreting out . . . groundless and improvident prosecutions." *Virgin*, 2006 UT 29, ¶ 18 (internal quotation marks omitted). In this regard, magistrates "are free to decline bindover

where the facts presented by the prosecution provide no more than a basis for speculation--as opposed to providing a basis for a reasonable belief." *Id.* ¶ 21. *See also State v. Cristobal*, 2010 UT App 228, ¶ 16, 238 P.3d 1096 (explaining that a reasonable inference "is a conclusion reached by considering other facts and deducing a logical consequence from them," while speculation is defined as the "act or practice of theorizing about matters over which there is no certain knowledge" (internal quotation marks omitted)); *Hester*, 2000 UT App 159, ¶ 16 ("[A]n inference is a deduction as to the existence of a fact which human experience teaches us can reasonably and logically be drawn from proof of other facts."). Thus, for the State to meet its evidentiary burden at a preliminary hearing, the inferences drawn from the evidence must be reasonable rather than speculative, *see Virgin*, 2006 UT 29, ¶ 21, and the evidence and reasonable inferences drawn therefrom must support the requisite reasonable belief that a crime occurred and that the defendant committed that crime, *see, e.g., In re I.R.C.*, 2010 UT 41, ¶ 24, 232 P.3d 1040.

¶12    The issue before us is whether the State presented sufficient evidence to support a reasonable inference that, in refusing to be interviewed by police and to testify at Griffin's trial, Maughan acted with the specific intent to hinder Griffin's prosecution. Specific intent is "[t]he intent to accomplish the precise criminal act that one is later charged with," whereas general intent is "[t]he intent to perform an act even though the actor does not desire the consequences that result." *Black's Law Dictionary* 882 (9th ed. 2009). The State cannot merely allege that hindering Griffin's prosecution was a natural consequence of Maughan's refusal to cooperate with the police and testify at Griffin's trial. Rather, the State must show that Maughan acted with the conscious objective to hinder Griffin's prosecution. "[I]ntent[, even specific intent,] need not be proved by direct evidence but may be inferred from [the] defendant's conduct and surrounding circumstances." *State v. Davis*, 711 P.2d 232, 234 (Utah 1985) (per curiam). Thus, we must look to the reasonable inferences that may be drawn from the evidence presented in order to establish whether there is sufficient evidence to establish the requisite specific intent.

¶13    In refusing to bind Maughan over for trial, the magistrate reasoned that "[t]his is not a case in which the facts give rise to two alternate inferences" because "[t]here are no facts in evidence to suggest that [Maughan] had any intent to hinder . . . Griffin's prosecution." Rather, the magistrate concluded that "the facts demonstrate that the only reasonable inference to be drawn from the evidence presented is that [Maughan] refused to provide or concealed non-privileged information to protect his interests against the prosecution of himself for murder." In support of this conclusion, the

magistrate pointed out that Maughan "provided assistance in the investigation and prosecution of . . . Griffin until [Maughan] himself was charged with the same murder," and only "[a]fter being charged [with capital murder did Maughan] . . . refuse[] to further assist in the investigation and prosecution of . . . Griffin." Essentially, Maughan's purpose was not to hinder Griffin's prosecution but to "protect his own . . . rights."

¶14 The State asserts that the magistrate incorrectly applied the bindover standard. According to the State, the district court ordered Maughan several times to submit to police interviews and to testify at Griffin's trial, informing him that "the prosecution had granted him immunity and therefore his testimony could not be used against him" and, further, warning him that if he failed to cooperate "he could be prosecuted for obstruction of justice." The State also explains that Maughan and Griffin had been friends at the time of the murder, suggesting that this relationship was Maughan's motive to protect Griffin. Based on this evidence, the State asserts that it can be reasonably inferred that it was Maughan's conscious objective to hinder Griffin's prosecution. The State goes further, contending that "[n]o evidence supports the magistrate's inference." The State also argues in the alternative that even if the magistrate could reasonably infer from the evidence that Maughan refused to be interviewed by the police and to testify to protect his constitutional rights, such an inference is no more reasonable than the inference that Maughan refused to testify in order to hinder Griffin's prosecution. The State maintains, therefore, that in refusing to bind Maughan over for trial, the magistrate erred by drawing inferences from the evidence in Maughan's favor rather than the State's. According to the State, if the evidence and inferences drawn therefrom are viewed in the proper light, there is sufficient evidence to support a reasonable belief that in refusing to testify at Griffin's trial, Maughan acted with the specific intent to hinder Griffin's prosecution.

¶15 The magistrate and the State have arrived at mutually exclusive conclusions with respect to the inferences that can be drawn from the evidence presented at the preliminary hearing. While we take issue with the absolute nature of each viewpoint, we ultimately agree with the magistrate that "the *only reasonable inference* to be drawn from the evidence presented is that [Maughan] refused to [cooperate] . . . to protect his interests against the prosecution of himself for murder," and any inference that Maughan intended to hinder Griffin's prosecution is not reasonable but is merely speculative. (Emphasis added.)

¶16    We disagree with the magistrate's assessment that "[t]here are *no facts* in evidence to suggest that [Maughan] had any intent to hinder . . . Griffin's prosecution." (Emphasis added.)  As the State contends, some of the evidence, when viewed in isolation, is capable of supporting an inference that Maughan acted with the necessary specific intent.  The path to such a conclusion is a simple one.  Maughan's early statement to police indicated that he had information pertinent to Griffin's prosecution, he was ordered by the court to be interviewed by the police and to testify at Griffin's trial, and he was given use immunity to protect him from the potentially harmful effects of complying with such orders.  He then refused to cooperate with investigators or to testify, and the natural consequence of his refusal was to hinder Griffin's prosecution by withholding what he knew about the circumstances of the murder.  Furthermore, his prior friendship with Griffin suggests a motive for so acting.  This evidence thus arguably supports an inference that Maughan possessed the specific intent to accomplish the consequence of his actions, i.e., hindering Griffin's prosecution.

¶17    We are, however, equally unpersuaded by the State's assertion that there is "[n]o evidence [that] supports the magistrate's inference" that Maughan acted to protect himself and his constitutional rights.  As the magistrate pointed out, it is undisputed that Maughan cooperated with police and gave a lengthy statement incriminating Griffin.  But Maughan's initial statement also implicated him in the murder, and the State accordingly charged him with capital murder, as Griffin's codefendant.  Only then did Maughan cease his cooperation with the police.  During the entire period that the State sought to compel Maughan to be interviewed by the police and give testimony at Griffin's trial, he was charged with capital murder.  During this time, at virtually every procedural juncture of the case, Maughan expressed strong distrust that the grant of immunity would fully protect him from all possible consequences of any further statements about his involvement in the murder.  He also persistently challenged the reliability and trustworthiness of the statements he had initially made to the police.  It is therefore reasonable to infer that Maughan was intensely absorbed, virtually to the exclusion of all other interests, in doing everything necessary and possible to defend against the capital murder charge.  Where compliance with the court's orders would require Maughan to repeat statements that would implicate him in the murder, the risks that Maughan faced from failing to follow the court's orders--a contempt proceeding or an obstruction of justice charge--must have seemed, to him, minor in comparison to the risk that cooperation might pose to his ability to defend himself from a possible sentence of life without parole.  This evidence supports a reasonable inference that Maughan was strongly focused on his own self-interest and self-preservation.

¶18    As we have acknowledged, some portion of the evidence is arguably capable of supporting the State's asserted inference that Maughan's intent in refusing to testify was to accomplish the natural result of that refusal, i.e., hindering Griffin's prosecution. But the reasonableness of that inference depends on isolating the evidence from which that inference is drawn from the remaining evidence concerning Maughan's ongoing defense against a capital murder charge. While the State's inference is perhaps plausible, that inference is contradicted and overwhelmed in light of the totality of the evidence. When the evidence is considered in its broader context, the State's inference becomes simply speculative rather than reasonable. Based on the entire evidentiary picture, the *only reasonable inference* to be drawn is that in refusing to testify at Griffin's trial, Maughan acted with the intent to protect himself. Given the requirements of specific intent as applied to the totality of the evidence, it is speculative to infer that, rather than acting to protect himself, Maughan's conscious objective was to hinder Griffin's prosecution.

¶19    Thus, in concluding that the State had failed to present sufficient evidence to prove that Maughan acted with the specific intent to hinder Griffin's prosecution, the magistrate fulfilled its crucial role in "ferreting out . . . groundless and improvident prosecutions" by "declin[ing] bindover where the facts presented by the prosecution provide no more than a basis for speculation--as opposed to providing a basis for a reasonable belief." *See State v. Virgin*, 2006 UT 29, ¶¶ 18, 21, 137 P.3d 787 (internal quotation marks omitted).

> The key word that elevates the magistrates' role beyond that of a mere rubber stamp for the prosecution is "reasonable." Indeed, the prosecution has not carried its burden if it merely shows belief rather than *reasonable* belief. Inclusion of the word "reasonable" in this standard suggests that, at some level of inconsistency or incredibility, evidence becomes incapable of satisfying the probable cause standard. When that is the case, magistrates are empowered to deny bindover.

*Id.* ¶ 22. Ultimately, the totality of the facts and the reasonable inferences drawn therefrom are incapable of establishing a reasonable belief that Maughan stopped cooperating with the State and refused to testify with the requisite specific intent to hinder Griffin's prosecution. We therefore agree with the magistrate that "the facts demonstrate that the only reasonable inference to be drawn from the evidence

presented is that [Maughan] refused [to be interviewed and to testify] . . . to protect his interests against the prosecution of himself for murder." Accordingly, the magistrate appropriately declined to bind over Maughan for trial on the obstruction of justice offense.

CONCLUSION

¶20   We conclude that the magistrate appropriately declined to bind over Maughan for trial on the obstruction of justice offense. Although there is some evidence to support the State's position that, in refusing to be interviewed by the police and testify at Griffin's trial, Maughan acted with the specific intent to hinder Griffin's prosecution, the only reasonable inference to be drawn from the totality of the evidence is that Maughan acted in his own self-interest to preserve his ability to defend against the capital murder charge. This reasonable inference, drawn from the totality of the evidence, so overwhelms the State's interpretation of the evidence that the State's position is not reasonable but is merely speculative.

¶21   Accordingly, we affirm.

_____
Stephen L. Roth, Judge

-----

¶22   WE CONCUR:

_____
Carolyn B. McHugh,
Presiding Judge

_____
James Z. Davis, Judge